HOMER GENE WILKINS, Plaintiff-Appellee v. SHIRLEY EVANS WILKINS, Defendant-Appellant

No. 9218DC419

(Filed 17 August 1993)

**1. Divorce and Separation § 142 (NCI4th)— equitable distribution — value of retirement plans — consideration of hypothetical tax consequences — error**

In determining the present value of plaintiff's retirement plans, the trial court erred in relying on hypothetical tax consequences arising from speculative early withdrawals, most of which defendant could not have made at the date of separation under the terms of the retirement plans, since the Equitable Distribution Act requires that "marital property shall be valued as of the date of the separation of the parties"; the expert at trial testified that the "before tax" value of the pension plans was $157,242.81 as of the date of separation; and the trial court therefore erred in concluding that the net present value of the pensions as of the date of separation was $93,084.60.

**Am Jur 2d, Divorce and Separation §§ 948, 949.**

**2. Divorce and Separation § 154 (NCI4th)— equitable distribution — pension plans — consideration of hypothetical tax consequence as distributional factor — error**

The trial court in an equitable distribution action erred in considering hypothetical tax consequences with regard to plaintiff's pension plans as a distributive factor in favor of plaintiff if the retirement plans' net present value as of the date of separation could not be discounted by the amount of the tax consequences, since to predict variables, such as the government's tax structure, plaintiff's financial condition, the date of plaintiff's early withdrawals, if any, and the date of plaintiff's early retirement, would require the court to engage in impermissible speculation.

**Am Jur 2d, Divorce and Separation § 915 et seq.**

3. **Divorce and Separation § 149 (NCI4th)— equitable distribution—consideration of alimony order improper**

The trial court erred by considering an ancillary order for alimony *pendente lite* in rendering an equitable distribution award.

**Am Jur 2d, Divorce and Separation § 925.**

4. **Divorce and Separation § 161 (NCI4th)— equitable distribution—rental value of marital residence—consideration of spouse's share—effect of alimony order**

The trial court could properly consider defendant's share of the rental value of the marital residence as a distributional factor pursuant to N.C.G.S. § 50-20(c) only if use of the residence was not awarded to defendant as part of the ancillary order for alimony *pendente lite*.

**Am Jur 2d, Divorce and Separation § 915 et seq.**

Appeal by defendant from judgment and order signed 12 December 1991 and order signed 3 February 1992 by Judge Benjamin D. Haines in Guilford County District Court. Heard in the Court of Appeals 31 March 1993.

The parties were married on 9 February 1958. The parties separated 14 January 1989. A judgment of divorce was entered 4 April 1990. The equitable distribution judgment was entered 12 December 1991. At this time, plaintiff and defendant were each 51 years of age.

In the 12 December 1991 "Judgment and Order of Equitable Distribution," the trial court noted that in a pre-trial order the parties had stipulated to "all issues of classification" regarding various items of property (attached as Schedule A to the order) and that the net present value of those items amounted to $17,092.42 for plaintiff and $20,388.14 for defendant. Additionally, the parties stipulated that the net present value of the marital home was $91,000.00. The trial court made the following findings of fact regarding plaintiff's employment benefits:

[Finding of Fact No.] 12. That at the time of the separation of the parties, the Plaintiff was entitled to certain employment benefits at his place of employment at Richardson-Vicks including the Richardson-Vicks Incentive Plan (hereinafter

WILKINS v. WILKINS

[111 N.C. App. 541 (1993)]

"RVIP"), the Richardson-Vicks Employee Savings Plan (hereinafter "ESP"), and the Individual Retirement Option Trust Plan (hereinafter "IROTP"), and that by order of this Court on April 30, 1991, pursuant to Rule 706 of the North Carolina Rules of Evidence and with the consent of the parties, this Court appointed and designated Mr. Keith Hiatt, CPA of the accounting firm of Deloitte & Touche as a court designated expert witness in order to determine the net value of the above employment benefits pursuant to N.C.G.S. Section 50-20, and also to determine the tax consequences of the receipt of said benefits by the Plaintiff with cost of this court appointed expert witness to be taxed as a part of the cost of this action and to be divided equally between the Plaintiff and Defendant.

13. The above designated court appointed expert, Mr. Keith Hiatt, is a Senior Tax Manager of Deloitte & Touche, having done a significant amount of work with Retirement Plans, specifically plan distributions and the taxation of these distributions, and the Court accepts as credible his testimony on the net present value of said employment benefits as well as the tax consequences thereon.

14. That pursuant to the provisions of the above referenced three employment benefit plans, there are restrictions on when the monies can be withdrawn, particularly as follows:

A. ESP: The before tax portion can only be withdrawn upon a showing of financial hardship, or at age 59-1/2 or if the Plaintiff leaves the company. The after-tax funds can be taken out at any time but only once a year. Only 50% of the company contributions can be taken out in any one year. The Employee Stock Ownership portion (ESOP) can only be withdrawn when the Plaintiff actually leaves the company.

B. RVIP: None of this money can be withdrawn initially. The Plaintiff can take withdrawals once he retires through an annuity over his life expectancy which would stop at the time of his death. In the event that the Plaintiff took early retirement at age 55 he would get a reduced benefit from that amount.

C. IROTP: These funds are not available until the age of 65, normal retirement age, or at an early retirement at age 55.

15. That the maximum net present value of the employment benefits including the ESP, the RVIP and IROTP as of January 14, 1989, is $93,084.60.

16. In the event that the Plaintiff was able to withdraw the above retirement benefits at the time of the valuation date, then the total North Carolina and Federal income taxes due on the total account balance of $157,242.81 would be $64,158.21, leaving a net value after tax of $93,084.60.

17. The Plaintiff is employed at Richardson-Vicks as a supervisor of a cough drop operation and has been employed there for 32 years. His current annual income is $44,000.00. He has been offered a package to leave the company including 14 month salary and medical insurance, but he has not considered any type of termination, early retirement, or other job change. He intends to work there until he retires which would be approximately at age 62.

Regarding defendant's receipt of alimony *pendente lite* pursuant to an ancillary order, the trial court made the following findings of fact:

[Finding of Fact No.] 22. That the Plaintiff and Defendant entered into a Consent Order in an ancillary proceeding in the General Courts of Justice, Guilford County, styled "Shirley Evans Wilkins vs. Homer Gene Wilkins" 89 CVD 6646, wherein Mr. Wilkins was obligated to pay to Mrs. Wilkins the sum of $600/month, for alimony, pendente lite, as well as being responsible for any reasonable and necessary uninsured medical and dental expenses. Said order also obligated Mr. Wilkins to be financially responsible for all reasonable and necessary routine maintenance and repairs of the residence of the parties provided that an equitable distribution adjustment at the time of the equitable distribution hearing would be preserved.

23. As a result of the subsequent pendente lite hearing, Mr. Wilkins was ordered to pay the total sum of $1,000/month in temporary alimony, said alimony pendente lite hearing being held on the 11th day of January, 1991.

WILKINS v. WILKINS

[111 N.C. App. 541 (1993)]

24. The Defendant Shirley Evans Wilkins worked in several production line jobs up until the job she had at AMP in 1983. When Mr. Wilkins then injured his back, the Defendant Mrs. Wilkins stayed out of work for approximately 9 months to take care of Mr. Wilkins. However, there were times when Mrs. Wilkins was in bad physical condition and Mr. Wilkins took care of her.

25. After Mr. Wilkins return to work in 1983, Mrs. Wilkins' physical problems did not prevent her from returning to gainful employment. Her hearing problem never prevented her from working at AMP, and does not prevent her from now engaging in gainful work similar to what she did at AMP. Her back problems, which have been most recently treated by Dr. Steven A. Grubb at the North Carolina Spine Center, do not prevent her from returning to gainful employment. Dr. Grubb indicates, and the Court finds this documented testimony to be credible, that Mrs. Wilkins could return to light duty work and that she could lift repetitively 5-10 pounds, and occasionally up to 25 pounds provided that she had a frequent change of position. After Mr. Wilkins returned to work in 1983, Mr. Wilkins never demanded that Mrs. Wilkins go back to work and Mrs. Wilkins never chose to go back to work at that time. Mrs. Wilkins' failure to resume working was her own choice.

26. That the parties have an underground storage tank on their premises which the defendant alleges needs to be replaced for what the Defendant Mrs. Wilkins testified to be the sum of $2,500.00, based upon one estimate from Jones Oil Company, but even though she is unemployed, the defendant Mrs. Wilkins testified that she has been too "busy" to get a second estimate, did not produce any written estimate from Jones Oil Company at this hearing and has not been told by any governmental agency or health department that this had to be done. Although the Court allowed this testimony over objection, the Defendant submitted no written documentation in the form of estimates or otherwise and the Court finds that the Defendant has not met her burden of proof on this issue.

27. Mrs. Amanda Coble, Vocational Rehabilitation [sic] who has worked in the vocational rehabilitation office in Greensboro

for approximately 3 years, testified that she was not in the position to place Mrs. Wilkins in a job but from her doctor's assessment she can go back to some kind of formal work. The defendant Mrs. Wilkins, has been cleared for light duty work by her orthopedic specialist, Dr. Steven Grubb, which is an assessment that the vocational specialist Mrs. Coble would rely on. Ms. Coble accepts Dr. Grubb's testimony as being determinative of this.

28. Ms. Coble's own rehabilitation records and entry made on 4/25/91 indicated that Mrs. Wilkins had a problem with motivation and cooperation with Vocational Rehabilitation. Furthermore, an entry on January 25, 1991 indicated that Mrs. Wilkins had not been back to Goodwill for 9 days and that they had not heard from her at Vocational Rehabilitation and would terminate her out of evaluation. Also, on an entry of February 21, 1991, Ms. Coble's records indicated that from a conversation with Dr. Cronin, her chiropractor, it appeared that Mrs. Wilkins did not tell the truth to her chiropractor, saying that it was manual labor and Ms. Coble had to explain to the chiropractor that the work at Goodwill was not manual labor.

29. The Court also finds that contemporaneously with these events, the Defendant Mrs. Wilkins was receiving an alimony pendente lite award by Order of the Court referred to hereinabove of $1,000/month.

In its conclusions of law, the trial court concluded that an equal distribution of marital property was not equitable:

10. Based on N.C.G.S. Section 50-20(c), the following factors herein set forth were determinative of the Court's finding an unequal division of the marital estate to be an equitable distribution:

A. The acts of the Plaintiff to maintain, preserve, develop or expand the homeplace of the parties . . .

B. The Defendant's use of the marital home for 28 months without paying the Plaintiff ½ of the fair rental value of $700-$800/month.

C. That based on the Court's determination that the said present value computation should include the calculation of

the tax consequences of the receipt of said monies by the Plaintiff, the net present value of the Plaintiff's employment benefits is no greater than the sum of $93,084.60.

D. As an alternative Conclusion of Law, the Court finds that had the net present value not included the tax consequences, then the Court would have found that pursuant to N.C.G.S. Section 50-20(c)(11) the tax consequences of the receipt of these employment benefits by the Plaintiff should be a distributional factor in the amount of $64,158.21.

Regarding the retirement benefits, the trial court specifically concluded that

5. That the proper method of evaluation of the plaintiff, Mr. Gene Wilkins' employment benefits pursuant to *Seifert v. Seifert*, 82 N.C. App. 329, 346 S.E.2d 504 (1986), *aff'd*, 319 N.C. 367, 354 S.E.2d 506, *reh. denied*, 319 N.C. 678, 356 S.E.2d 790 (1987), is the net present value approach and not the fixed percentage method since the Defendant Mrs. Wilkins will be receiving the homeplace which is of comparable value to the net present value of said employment benefits and the plaintiff must receive the net present value of these assets to fairly equalize the distribution of marital property.

6. That pursuant to N.C.G.S. Section 50-20(b)(1), the marital estate and status of the Plaintiff's employment benefits are frozen as of date of separation, *Becker v. Becker*, [88 N.C. App. 606], 364 S.E.2d 175 (1988). Pursuant to [G.S.] 50-20(b)(1)(3)(d), the Plaintiff's employment benefits should be calculated as of date of separation, and the value of the employment benefits should be done at the net value as of date of separation which should include the taxes which would be payable upon receiving the benefits, *Mishler v. Mishler*, [90 N.C. App. 72,] 367 S.E.2d 385 (1988) [, *disc. rev. denied*, 323 N.C. 174, 373 S.E.2d 111]. Therefore, the court finds as a Matter of Law that the net present value of said employment benefits as supported by the evidence is $93,084.60.

Plaintiff was awarded the retirement benefits (which the trial court valued at $93,084.60) and defendant was awarded the marital residence (valued at $91,000.00 by the parties' stipulation in the pre-trial order). Adding to this award the value of the items stipulated to by the parties in the pre-trial order, the trial court stated that

plaintiff received property worth $110,177.06 and defendant received property worth $111,388.14. Finally, the trial court concluded that

> 15. Based on the above division of marital property, the following distributive award should be paid by the Defendant to the Plaintiff:

| | |
|---|---:|
| A. Difference in above division of marital property | $ 1,211.12 |
| B. One-half of home improvement/ repairs and appraisal | $ 4,377.90 |
| C. One-half of fair rental value of homeplace ($350/month) | $ 9,800.00 |
| TOTAL: | $15,389.02 |

On 20 December 1991, defendant filed a motion for a new trial pursuant to G.S. 1A-1, Rule 59. On 3 February 1992, the trial court denied defendant's motion for a new trial. Defendant appeals from both the 12 December 1991 order and judgment and the 3 February 1992 order denying her motion for a new trial.

*Gabriel Berry & Weston, by M. Douglas Berry, for plaintiff-appellee.*

*Douglas, Ravenel, Hardy, Crihfield & Moseley, by G.S. Crihfield and David W. McDonald, for defendant-appellant.*

EAGLES, Judge.

Defendant contends that the trial court erred in rendering its 12 December 1991 equitable distribution order. We agree. We reverse the trial court's 12 December 1991 equitable distribution order and accordingly remand for a new trial.

I.

First, defendant contends that "the trial court erred in reducing the nominal value of the retirement benefits." We proceed with an examination of the trial court's order.

A. *Valuation Pursuant to G.S. 50-21(b) (Date of Separation)*

[1] G.S. 50-20(b)(1) provides that "[m]arital property includes all vested pension, retirement, and other deferred compensation rights."

**WILKINS v. WILKINS**

[111 N.C. App. 541 (1993)]

Marital property must be valued as of the date of separation. G.S. 50-21(b). *See* G.S. 50-20(b)(3) ("vested accrued benefit" is to be "calculated as of the date of separation").

From findings of fact Nos. 12-16 and conclusions of law Nos. 6 and 10, it is apparent that the trial court relied on hypothetical tax consequences arising from speculative early withdrawals, most of which defendant could not have made at the date of separation under the terms of the retirement plans. Conclusion of law No. 10 provided:

> C. That based on the Court's determination that the said present value computation should include the calculation of the tax consequences of the receipt of said monies by the Plaintiff, the net present value of the Plaintiff's employment benefits is no greater than the sum of $93,084.60.

> D. As an alternative Conclusion of Law, the Court finds that had the net present value not included the tax consequences, then the Court would have found that pursuant to N.C.G.S. Section 50-20(c)(11) the tax consequences of the receipt of these employment benefits by the Plaintiff should be a distributional factor in the amount of $64,158.21.

Conclusion of law 10(c), *supra*, was erroneous in that the Equitable Distribution Act requires that "marital property shall be valued as of the date of the separation of the parties." G.S. 50-21(b). The expert at trial testified that the "before tax" value of the pension plans was $157,242.81 as of the date of separation. Accordingly, the trial court erred in concluding that the net present value of the pensions as of the date of separation was $93,084.60. *See Stiller v. Stiller*, 98 N.C. App. 80, 83, 389 S.E.2d 619, 621 (1990) (holding that trial court erred in using the "withdrawal value" to determine the respective values of the parties' vested retirement benefits). *Accord, Orgler v. Orgler*, 237 N.J. Super. 342, 354-55, 568 A.2d 67, 73 (App.Div. 1989); *Hovis v. Hovis*, 518 Pa. 137, 143, 541 A.2d 1378, 1380-81 (1988); *In Re Marriage of Marx*, 97 Cal.App.3d 552, 159 Cal.Rptr. 215 (1979). *Contra, In Re Marriage of Mulvihill*, 471 N.E.2d 10 (Ind.App. 1984).

We note the trial court's reliance on *Mishler v. Mishler*, 90 N.C. App. 72, 78, 367 S.E.2d 385, 389 (1988) in determining the value of the retirement benefits on the date of separation. We find *Mishler* to be readily distinguishable. Unlike here, in *Mishler*

the defendant had already paid the taxes before the equitable distribution hearing was held. In *Mishler*, the defendant participated in her employer's "contribution pension plan" which was to vest in 1990. The defendant's employer dissolved its business in 1983 and a plan was adopted terminating the "contribution pension plan" in 1984. Approximately two years before the equitable distribution hearing was held, the defendant received a lump sum award according to the plan of termination and paid the appropriate taxes. Accordingly, in *Mishler* this Court held that "[t]he trial court was also correct to value the pension by subtracting from the lump sum award, the taxes which defendant paid upon receiving the benefits before the [equitable distribution] hearing was held. It would not have been equitable for defendant to have paid all of the taxes on the benefits while plaintiff received half of the proceeds." *Id.* Unlike *Mishler*, here the tax consequences considered by the trial court are merely hypothetical assertions; the funds have not been withdrawn and, of course, no taxes have been paid on the retirement benefits.

### B. *Consideration of Hypothetical Tax Consequences as a Distributive Factor Pursuant to G.S. 50-20(c)(11)*

[2] Next, we address conclusion of law 10(d), in which the trial court stated that the estimated amount of the taxes ($64,158.21) would be considered as a distributive factor in favor of plaintiff if the retirement plans' net present value (as of the date of separation) could not be discounted by the amount of the tax consequences. Defendant argues that the trial court's consideration of these hypothetical tax consequences as a distributive factor pursuant to G.S. 50-20(c)(11) was error. We agree.

Here, Keith Hiatt, the court appointed expert, testified as follows regarding the hypothetical tax consequences:

Q: Now, based on your computations, I believe, the gross value of the plan is what, the gross value of the total proceeds?

A: $157,242.81.

Q: And the taxes that Mr. Wilkins would pay upon withdrawal of all those monies in 1989 was—

A: $64,000. Well, the additional tax or the total tax?

Q: Just that tax attributable to the retirement monies.

A: $64,158.21.

Q: And that amount you have determined is the sum of what, $93,000?

A: $93,084.60 is the net—in other words, that is the amount that he would have in his pocket after tax, and he would be able to take and use.

Q: Mr. Hiatt, is it correct that pursuant to the plans and provisions of these plans, not all these monies can be withdrawn in the year 1989?

A: That's right. And even within the plans themselves, there are different provisions on when he can take the funds out. . . .

* * *

Q: How do you determine what the value of that is as of that date, in terms of that present value, to take into account the restrictions that you have just testified to?

A: You know, that posed a substantial problem for us in terms of analyzing what is the present value of an account balance that can't be withdrawn today, and can be withdrawn at various times throughout the next several years. And of course, some of those variables are dependent upon his decision as to whether early retire.

But if we assumed that he took them out at the earliest possible point, and present valued that back, we looked at the different variables on that and determined that really, the present value—in other words, taking today's dollar amounts less the tax cost—we felt that that was the most reasonable estimate, maximum value—present value—of his account balances in those different retirement plans.

* * *

I believe, based on the analyses we've looked at, that the $93,084.60 fairly represents the maximum present value of those retirement plan balances as of that date.

Q: In your letter, the next sentence, would you read that for the record?

A: "A lower discounted amount for the present value of funds which cannot be withdrawn today is also supportable."

Q: What do you mean by that?

A: Well, the fact that you can't get those funds today is a limiting factor. Anytime you can't get a dollar today, you have to wait a year, five years, ten years, it presupposes—I mean, you assume necessarily that dollar is not worth a dollar today. If you have to wait a year to get it, maybe it's worth eighty cents today, or sixty cents today. If you have to wait ten years, it's even worth less.

So we didn't get into the analysis of making assumptions about, well, how much should it be discounted back? That makes us assume a certain interest rate and forecast that, and I'm not in a position to do that, unless someone wants to say, "Well, let's assume that it's this discount rate for this period of time." So that's why we concluded and looked at the different variables, and concluded the $93,000 number more fairly represented the present value of those retirement plan balances.

In support of her argument, defendant contends that this Court "recently dismissed as 'purely speculative' a similar claim of tax consequences in the absence of any claim of actual withdrawal of retirement benefits. *Smith v. Smith*, 104 N.C. App. 788, 789-90, 411 S.E.2d 197 (1991)." As in *Smith*, here plaintiff "does not argue that he was or would be forced to withdraw all or any part of the fund to comply with any distribution ordered by the court; thus, the fact of withdrawal and the possible tax consequences are purely speculative. *See Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E.2d 915 (1985)." *Smith* at 790, 411 S.E.2d at 198. In *Weaver*, this Court stated:

The trial court is not required to consider possible taxes when determining the *value* of property in the absence of proof that a taxable event has occurred during the marriage or *will* occur with the division of the marital property. *In re Marriage of Fonstein*, 131 Cal. Rptr. 873, 552 P.2d 1169 (1976); *accord Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975). We construe Section 50-20(c)(11) of the General Statutes as requiring the court to consider tax consequences that will result from the distribution of property that the court actually orders.

*Weaver*, 72 N.C. App. at 416, 324 S.E.2d at 920 (emphasis in original). Here, funds could be withdrawn from plaintiff's retirement plans

WILKINS v. WILKINS

[111 N.C. App. 541 (1993)]

only upon the occurrence of certain events, none of which had occurred on or before the date of separation or the date of the hearing, and many of which could not occur until at least several years after the date on which the judgment was entered. We conclude that to predict variables (including *inter alia* the government's tax structure, plaintiff's financial condition, the date of plaintiff's early withdrawals, if any, and the date of plaintiff's eventual retirement) that far in the future requires the trial court to engage in impermissible speculation. Accordingly, we reaffirm the holding of *Smith*, 104 N.C. App. 788, 411 S.E.2d 197, and *Weaver*, 72 N.C. App. 409, 324 S.E.2d 915, in concluding that the trial court erred in considering the hypothetical tax consequences as a distributive factor here. *Accord, Hovis v. Hovis*, 518 Pa. 137, 541 A.2d 1378 (1988); *Helland v. Helland*, 354 N.W.2d 591 (Minn.App. 1984). *Cf. Scallon v. Hooper*, 58 N.C. App. 551, 555, 293 S.E.2d 843, 845, *disc. rev. denied*, 306 N.C. 744, 295 S.E.2d 480 (1982) (rejecting consideration of income tax consequences in awarding damages for wrongful death because *inter alia* "the amount of a future recipient's future income tax liability is too conjectural or speculative a factor"); *Cobb v. Cobb*, 107 N.C. App. 382, 386, 420 S.E.2d 212, 214 (1992) (projection of future value of timber which would not mature until the year 2007 too speculative); *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 78, 418 S.E.2d 675, 679 (1992) (noting that "evidence of 'speculation or conjecture that a detrimental change may take place sometime in the future' will not support a change in custody"); *First National Bank of Catawba County v. Edens*, 55 N.C. App. 697, 705, 286 S.E.2d 818, 823 (1982) (striking from judgment a ruling regarding trustees' possible future abuse of discretion and noting that "[j]udicial power does not extend to abstract questions but only to concrete, justiciable, and actual controversies properly before the court; each decision of law must be based on specific determinative facts"). *Contra, Orgler v. Orgler*, 237 N.J. Super. 342, 357, 568 A.2d 67, 74 (App. Div. 1989); *Noll v. Noll*, 55 Ohio App.3d 160, 563 N.E.2d 44 (1989); *Selchert v. Selchert*, 90 Wis.2d 1, 280 N.W.2d 293 (1979).

## II.

[3] Next, defendant contends that the trial court erred by considering the ancillary order for alimony *pendente lite* in rendering the equitable distribution award. We agree.

G.S. 50-20(f) provides:

WILKINS v. WILKINS

[111 N.C. App. 541 (1993)]

> The court shall provide for an equitable distribution without regard to alimony for either party or support of the children of both parties. After the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated pursuant to G.S. 50-16.9 or 50-13.7.

In interpreting G.S. 50-20(f), this Court has held:

> The mandate could not be clearer or less equivocal. Equitable distribution, when properly demanded, must be granted upon the divorce decree being entered . . . if alimony or child support has already been awarded, the awards must be reconsidered upon request *after* the marital property has been equitably distributed. This order of events is required, no doubt, because of the obvious relationship that exists between the property that one has and his or her need for support and the ability to furnish it.

*Capps v. Capps*, 69 N.C. App. 755, 757, 318 S.E.2d 346, 348 (1984) (emphasis added).

It is apparent from findings of fact Nos. 22-29 and conclusions of law Nos. 7, 10 and 15 that the trial court, in its attempt to make an equitable distribution, improperly considered the alimony *pendente lite* awarded to defendant in an ancillary proceeding. Upon remand, the equitable distribution judgment must be rendered without regard to either the order for alimony *pendente lite* or the plaintiff's compliance with that order.

## III.

[4] Next, defendant contends that the trial court improperly considered as a distributional factor "the [defendant's] use of the marital home for 28 months without paying the plaintiff ½ of the fair rental value of $700-$800/month." The court awarded rental value of the marital residence for the post-separation period as a part of the equitable distribution proceeding. Such an award is prohibited. *Black v. Black*, 94 N.C. App. 220[, 222], 379 S.E.2d 879, 880 (1989).

Our inquiry proceeds with an examination of *Black* and the decision it relies upon, *Becker v. Becker*, 88 N.C. App. 606, 364 S.E.2d 175 (1988).

In *Black*, 94 N.C. App. at 221-22, 379 S.E.2d at 880, this Court stated that:

> The sole issue presented by defendant's appeal is whether "the trial court erred in denying the application by the defendant for judgment against the plaintiff for one-half of the fair rental value of the residence of the parties from the time of the separation of the parties through the date of the hearing." . . .

> In *Becker v. Becker*, 88 N.C. App. 606, 364 S.E.2d 175 (1988), this Court held that a trial court may not award rental value of the marital residence for the post-separation period as a part of the equitable distribution proceeding. Therefore, we find that defendant's claim is without merit.

However, the holding in *Black, supra*, did not determine whether the rental value of a marital residence could be considered as a *distributional factor* pursuant to G.S. 50-20(c). In *Becker*, the decision upon which *Black* relies, this Court stated:

> The trial court found that the marital residence had a rental value during the post-separation period when it was occupied by defendant. Defendant does not take issue with the value component found by the trial court, but argues that the trial court was without authority to include any such value in the marital estate. We agree with defendant. N.C. Gen. Stat. § 50-20(b)(1) provides:

>> (1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties. . . .

> Thus, the statute makes it clear that for the purpose of *classification* of property (as either marital or separate) the marital estate is frozen as of the date of separation. While its components clearly may increase in value after separation and before distribution, *see e.g. Swindell v. Lewis*, 82 N.C. App. 423, 346 S.E.2d 237 (1986), no new property may be added to the marital estate after the date of separation.

> Our decision does not mean that a trial court is foreclosed from considering the post-separation use of the marital residence in reaching its decision as to whether an equal distribution

is equitable. G.S. § 50-20(c) contains provisions pertinent to this issue as follows:

> (c) There shall be an equal division . . . unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

> * * *

> (11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert such marital property, during the period after separation of the parties and before the time of distribution; and

> (12) Any other factor which the court finds to be just and proper.

> The evidence and findings in the present case show that during the period of separation, for about three years, defendant had the exclusive use of the marital residence, but maintained it and paid taxes and insurance on it. All of these are factors the trial court may consider on remand in making its determination as to whether an equal distribution is equitable; or, if not, what unequal but equitable distribution should be made.

*Becker*, 88 N.C. App. at 607-08, 364 S.E.2d at 176-77. Here, the record is unclear as to whether the ancillary order awarded defendant possession of the marital residence as part of the award of alimony *pendente lite*. The ancillary order is not included in the record on appeal. The order is mentioned in finding of fact No. 22, where the trial court stated

> That the Plaintiff and Defendant entered into a Consent Order in an ancillary proceeding in the General Courts of Justice, Guilford County, styled "Shirley Evans Wilkins vs. Homer Gene Wilkins" 89 CVD 6646, wherein Mr. Wilkins was obligated to pay to Mrs. Wilkins the sum of $600/month, for alimony, pendente lite, as well as being responsible for any reasonable and necessary uninsured medical and dental expenses. Said order also obligated Mr. Wilkins to be financially responsible

**WILKINS v. WILKINS**

[111 N.C. App. 541 (1993)]

for all reasonable and necessary routine maintenance and repairs of the residence of the parties provided that an equitable distribution adjustment at the time of the equitable distribution hearing would be preserved.

However, this finding of fact fails to disclose whether the ancillary order awarded defendant possession of the marital residence as part of the award of alimony *pendente lite*.

Accordingly, upon remand the trial court shall inquire as to whether the marital residence was awarded to defendant as part of the ancillary order for alimony *pendente lite*. If use of the marital residence was *not* awarded to defendant as part of the ancillary order for alimony *pendente lite*, the trial court *may* consider defendant's share of the rental value of the marital residence as a distributional factor pursuant to G.S. 50-20(c). *Becker*, 88 N.C. App. at 607-08, 364 S.E.2d at 176-77. If use of the marital residence *was* awarded to defendant as part of the ancillary order for alimony *pendente lite*, the trial court shall not consider the rental value of the residence as a distributional factor. G.S. 50-20(f) ("The court shall provide for an equitable distribution without regard to alimony for either party.").

## IV.

Finally, defendant argues that the trial court erred when it denied her motion for a new trial. Based on the errors of law discussed *supra*, we conclude that defendant is entitled to a new trial. Accordingly, we reverse the 12 December 1991 equitable distribution order and remand for a new trial.

Reversed and remanded for a new trial.

Judges MARTIN and JOHN concur.