WILLIAM EDWARD DOLAN, Plaintiff v. KAREN ANN DOLAN, Defendant

No. COA01-103

(Filed 2 January 2002)

**1. Divorce— equitable distribution—hypothetical tax consequences**

The trial court erred by considering hypothetical tax consequences as a distributional factor in an equitable distribution action where the court determined the tax consequences of the liquidation of rental properties, but did not find that the parties would have to liquidate the rental properties or that there would be any actual tax consequences.

**2. Divorce— equitable distribution—distributional factors— rental income**

The trial court erred in an equitable distribution action by not making sufficient findings as to whether rental income should be a distributional factor.

Judge WYNN dissenting.

Appeal by defendant from judgment entered 31 August 2000 by Judge H. Thomas Jarrell, Jr. in Guilford County District Court. Heard in the Court of Appeals 28 November 2001.

*Hatfield & Hatfield, by Kathryn K. Hatfield, for plaintiff-appellee.*

*Floyd and Jacobs, L.L.P., by Jack W. Floyd and Robert V. Shaver, Jr., for defendant-appellant.*

WALKER, Judge.

Plaintiff and defendant were married on 7 August 1971. At the time, plaintiff was in optometry school and defendant was employed as a teacher to support the family. After having children, they agreed that defendant should stay at home to take care of them.

During the marriage, plaintiff began his own optometry practice and the couple acquired eight rental properties—mainly single family dwellings. Plaintiff's optometry practice held title to five of the rental properties while plaintiff and defendant held the other three as tenants by the entirety.

**DOLAN v. DOLAN**

[148 N.C. App. 256 (2002)]

The parties separated on 11 October 1994 and plaintiff filed for absolute divorce one year later. Defendant counterclaimed for equitable distribution of the marital property. The divorce was granted on 4 December 1995; however, the issue of equitable distribution was preserved for subsequent hearings. In the pre-trial order, the parties entered into certain stipulations, including the value of the rental properties and the distribution of the optometry practice to the plaintiff. Therefore, the trial court only had to determine the value of the optometry practice, the distribution of the rental properties, and the distribution of debts existing at the date of separation.

After hearing the evidence and arguments on 26 April 2000, the trial court outlined its findings and distributions. It then sent a letter to both counsel again stating its findings and asking that counsel for plaintiff prepare a proposed order. On 10 June 2000, counsel for plaintiff faxed the proposed order to counsel for defendant. On 21 June 2000, counsel for defendant informed the trial court that he "strongly objected" to the proposed order and requested a hearing. On 31 August 2000, without a further hearing, the trial court signed and filed its final order for distribution of the marital property. The findings included the following in part:

11. The Plaintiff's expert, Mr. Boger, a CPA, testified that based upon the tax basis as reflected in the tax returns provided to him, if the rental property distributed to the Plaintiff were liquidated at the present value which was stipulated in the Pre-Trial Order, the Plaintiff would pay state and federal taxes at a rate of 25% for personal income taxes of $46,726. Because the five properties distributed to the Plaintiff are held by the Plaintiff's professional corporation, he would also pay corporate taxes at the rate of 35% in the amount of $65,415. The Court has taken this tax implication into account in determining the distribution of the marital estate.

12. Using the same tax returns to determine the tax basis and using the present value as stipulated in the Pre-Trial Order, the Defendant would pay state and federal taxes at a rate of 25% if she were to liquidate the three rental properties distributed to her in the amount of $21,500. The Court has taken this tax implication into account in determining the distribution of the marital estate.

. . .

17. During most of the marriage, the Defendant remained at home and raised the parties' children. While she had a college

DOLAN v. DOLAN

[148 N.C. App. 256 (2002)]

degree, until the children were all in school, there was no dis-
agreement that she would not seek public work. She is employed
part-time in a book store earning $7 an hour. Since the date of
separation, the Plaintiff has collected the rent on the parties'
rental property and has paid down the debt. He has also managed
the properties and tended to repairs and tenant problems.

18. In establishing the distribution of the marital estate as set out
herein, the Court considered the homemaker's contribution made
by the Defendant, the Defendant's lower earning capacity, and the
tax consequences of the division of the rental property upon each
party. After consideration of these facts, the Court finds that an
equal distribution is not equitable.

The trial court concluded that plaintiff should receive a distribution
with a total value of $602,169.07. Defendant should receive a distri-
bution with a total value of $526,592.82. These totals do not reflect
the estimated tax consequences to either party which the trial court
specifically took into account as a distributional factor. We only con-
sider the order filed on 31 August 2000 in this appeal.

[1] We first address defendant's contention that the trial court erred
by considering speculative tax consequences as a factor in determin-
ing the distribution of the marital property. In determining whether an
equal distribution of marital property is equitable to the parties, the
trial court must consider all of the factors listed in N.C. Gen. Stat.
§ 50-20(c) (2001). These factors include "[t]he tax consequences to
each party." N.C. Gen. Stat. § 50-20(c)(11). Our courts have construed
this provision "as requiring the court to consider tax consequences
that will result from the distribution of property that the court actu-
ally orders." *Weaver v. Weaver*, 72 N.C. App. 409, 416, 324 S.E.2d 915,
920 (1985). It is error for a trial court to consider "hypothetical tax
consequences as a distributive factor." *Wilkins v. Wilkins*, 111 N.C.
App. 541, 553, 432 S.E.2d 891, 897 (1993).

Here, the trial court found that if the rental properties were liqui-
dated at the present stipulated value, plaintiff would have personal
income tax consequences of $46,726 and a corporate tax liability of
$65,415. It also found that defendant would have income tax conse-
quences of $21,500 "if she were to liquidate the three rental properties
distributed to her." Furthermore, there was no finding that, as a direct
result of the distribution, the parties would have to liquidate the
rental properties or that there would be any actual tax consequences.

The trial court did not order any of the rental properties to be liquidated as part of the distribution.

The tax consequences which the trial court specifically took into account were hypothetical and speculative and fell within the *Wilkins* prohibition. Without a finding that there would be tax consequences as a direct result of the distribution, it is error to consider these speculative tax consequences. *Accord, Crowder v. Crowder,* 147 N.C. App. 677, 556 S.E.2d 639 (2001). Thus, the trial court erred in using these hypothetical and speculative tax consequences as a distributional factor.

[2] Defendant also claims that the trial court erred in not taking into account post-separation income which plaintiff received from the rental properties. When evidence of multiple distributional factors exists, "the trial court must make findings as to each factor for which evidence was presented." *Rosario v. Rosario,* 139 N.C. App. 258, 261, 533 S.E.2d 274, 276 (2000). Here, the trial court found the plaintiff had received post-separation rental income and had paid certain expenses. However, the trial court failed to make sufficient findings based on the evidence as to whether the rental income should be a distributional factor.

In summary, the trial court erred in considering hypothetical tax consequences as a distributional factor. It further erred by failing to make proper findings as to whether the post-separation rental income should be a distributional factor. On remand the trial court, in proceeding consistent with this opinion, may take additional evidence or make additional findings based on the existing record.

Vacated and remanded.

Judge THOMAS concurs.

Judge WYNN dissents.

WYNN, Judge dissenting.

N.C. Gen. Stat. § 50-20(c)(11) (1999) requires the trial court in determining whether "an equal division is not equitable" to consider as a factor: "The tax consequences to each party." I dissent from the majority holding and *certify* to our Supreme Court under N.C. Gen. Stat. § 7A-30 (1999) the issue of whether the plain language of N.C. Gen. Stat. § 50-20(c)(11) should be judicially limited to apply only

where such taxes are incurred as a direct result of the distributional award. *See Wilkins v. Wilkins*, 111 N.C. App. 541, 432 S.E.2d 891 (1993); *Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E.2d 915 (1985).

"The law has long been that where the plain language of a statute . . . is unambiguous on its face, the court is bound by the clear meaning." *Hamby v. Hamby*, 143 N.C. App. 635, 645, 547 S.E.2d 110, 117, *disc. review denied*, 354 N.C. 69, 553 S.E.2d 39 (2001). "When language used in [a] statute is clear and unambiguous, [the Court] must refrain from judicial construction and accord words undefined in the statute their plain and definite meaning." *Hieb v. Lowery*, 344 N.C. 403, 409, 474 S.E.2d 323, 327 (1996), (quoting *Poole v. Miller*, 342 N.C. 349, 351, 464 S.E.2d 409, 410 (1995)). "[W]here the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is a general rule of construction that the courts have no authority to create, and will not create, exceptions to the provisions of a statute not made by the act itself." *Upchurch v. Funeral Home*, 263 N.C. 560, 565, 140 S.E.2d 17, 21 (1965) (quoting 50 Am. Jur. Statutes § 432, p. 453 (1944)). Here, the language of the statute is clear and it is not necessary for us to resolve an ambiguity.

Under N.C. Gen. Stat. § 50-20(c)(11) the legislature imposed no limitation on the trial court's consideration of the tax consequences as a factor in the distribution of marital property. N.C. Gen. Stat. § 50-20(c) provides in pertinent part that:

There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. Factors the court shall consider under this subsection are as follows:

. . .

(11) The tax consequences to each party.

Moreover, other jurisdictions have not been restrictive in determining when a trial court may consider tax consequences. *See, e.g., In re Bookout*, 833 P.2d 800, 806 (Colo. App. 1991), *cert. denied*, 846 P.2d 189 (Colo. 1993); *Hogan v. Hogan*, 796 S.W.2d 400, 408 (Mo. App. 1990); *White v. White*, 105 N.M. 600, 734 P.2d 1283, 1286 (1987); *Barnes v. Barnes*, 16 Va. App. 98, 428 S.E.2d 294, 300 (1993); *see also* Tracy A. Bateman, Annotation, Divorce and Separation:

**STEVENSON v. JOYNER**

[148 N.C. App. 261 (2002)]

Consideration of Tax Consequences in Distribution of Marital Property, 9 A.L.R. 5th 568, 592, § 2[a] (1993).

Since the plain language of the statute provides no such limitation on the consideration of tax consequences in determining whether an equal division is not equitable, I *certify* to our Supreme Court the holdings of this Court to the contrary. N.C. Gen. Stat. § 7A-30.