JAMES L. PLUMMER, SR., Plaintiff v. JOYCE ANN PLUMMER, Defendant

No. COA08-1158

(Filed 4 August 2009)

**1. Divorce— equitable distribution—real property—valuation**

The trial court did not err in an equitable distribution action in its valuation of real property where the court had to value the property nine years after the date of separation and no professional appraisals were presented, but the parties presented tax values, outstanding tax bills, and outstanding mortgages. There was competent evidence to support the valuation.

**2. Divorce— equitable distribution—real estate debt— distribution**

The distribution of debt securing real estate in an equitable distribution proceeding was remanded where it was not clear from the trial court's order whether the debt was to be distributed along with the property or separate from it. There was no abuse of discretion in the valuation of the property.

**3. Divorce— equitable distribution—unequal distribution— findings—not sufficient**

The trial court's findings supporting an unequal distribution in an equitable distribution action were not sufficient to allow appellate review and were remanded.

**4. Divorce— equitable distribution—use of assets**

The trial court did not err in an equitable distribution action by considering plaintiff's use of his retirement funds, his maintenance of property, and his retention of the benefits of the property. Acts that waste, neglect, devalue, or convert marital or divisible property are statutory distributional factors.

**5. Divorce— equitable distribution—unequal distribution— speculative tax consequences**

An unequal distribution of property in an equitable distribution action was remanded because the court considered speculative tax consequences where no evidence of tax consequences was presented.

**6. Divorce— equitable distribution—distribution of property—party's opinion**

The trial court did not err in an equitable distribution proceeding by considering a party's opinion regarding the distribution of property under the catch-all provision of the statute.

**7. Divorce— equitable distribution—findings—ability. to pay—no evidence on tax consequences**

Although plaintiff argued in an equitable distribution action that the trial court erred by ordering him to pay a distributional award without considering tax consequences or his ability to pay, the court found that plaintiff had the ability to pay the award and plaintiff did not present evidence about any alleged tax consequences.

Appeal by plaintiff from judgment entered 6 March 2008 by Judge Thomas G. Taylor in Gaston County District Court. Heard in the Court of Appeals 26 February 2009.

*Wake Family Law Group, Sokol McLamb Schilawski Oliver Ladd & Grace, PLLC by Suzanne R. Ladd, for plaintiff-appellant.*

*Terry Albright Kenny, P.C. by Terry Albright Kenny, for defendant-appellee.*

JACKSON, Judge.

James L. Plummer, Sr. ("plaintiff") appeals the 6 March 2008 equitable distribution judgment ordering an unequal division of property in favor of Joyce Ann Plummer ("defendant"). For the reasons stated below, we remand.

Plaintiff and defendant were married to each other on 25 November 1961 and separated on 25 May 1999. Plaintiff filed an action for absolute divorce on 31 May 2000. On 23 June 2000, defendant filed an answer and counterclaim, admitting the allegations in plaintiff's complaint and seeking an equitable distribution of property. The parties' divorce was granted on 21 July 2000, with equitable distribution left open to be determined at a later date.

Plaintiff has asbestosis and a brain injury. Defendant had heart transplant surgery in 2002. Defendant filed a motion for an interim allocation of one-half of a portion of the property being held by plain-

PLUMMER v. PLUMMER

[198 N.C. App. 538 (2009)]

tiff, including retirement and pension accounts. The motion was heard on 17 April 2007 and the trial court distributed a portion of the marital property pursuant to an order filed 12 September 2007.

The equitable distribution hearing ultimately was held on 18 February 2008, nearly nine years after the parties separated. The trial court, *inter alia*, awarded the home at 419 Kirby Drive in which defendant had been living to defendant, and the home at 123 Riverside Drive in which plaintiff had been living to plaintiff. The trial court also ordered plaintiff to pay to defendant a distributive award of $90,000.00. Plaintiff appeals.

The proper standard of review of equitable distribution awards was expressed in *White v. White*, 312 N.C. 770, 324 S.E.2d 829 (1985).

Historically our trial courts have been granted wide discretionary powers concerning domestic law cases. The legislature also clearly intended to vest trial courts with discretion in distributing marital property under N.C.G.S. 50-20 . . . .

It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*Id.* at 777, 324 S.E.2d at 833 (internal citations omitted). "In conformity with the standard of review, this Court will not 'second-guess values of marital . . . property where there is evidence to support the trial court's figures.' " *Pellom v. Pellom*, 194 N.C. App. 57, 62, 669 S.E.2d 323, 325 (2008) (alteration in original) (quoting *Mishler v. Mishler*, 90 N.C. App. 72, 74, 367 S.E.2d 385, 386, *disc. rev. denied*, 323 N.C. 174, 373 S.E.2d 111 (1988)), *disc. rev. denied*, 363 N.C. 375, —— S.E.2d —— (2009).

[1] Plaintiff first argues that the trial court erred in valuing the real properties located at 419 Kirby Drive and at 123 Riverside Drive. Based upon the standard of review, we disagree. However, we note that our review would be easier had the trial court been more precise in its statement of property values.

Here, the trial court was in the unenviable position of attempting to value real property approximately nine years after the date of separation. Accordingly, there were significant differences between the date of separation values of the properties and the date of distribution values. No professional appraisals were presented to the trial court as evidence of the properties' values at either time. However, the parties presented tax values, outstanding tax bills, and evidence of outstanding mortgages with respect to the various properties.

As to the residence at 419 Kirby Drive, 1999 tax records reflect a tax value of $35,550.00 on the date of separation. It was not encumbered by a mortgage, but it did have outstanding tax liens of $1,804.00. Accordingly, there was competent evidence from which the trial court could conclude that its net value as of the date of separation was $35,550.00 less $1,804.00, or $33,746.00. By 2007, the tax value of the property was $42,600.00, an increase of $7,050.00. At that time, there was no mortgage debt, but the outstanding taxes due on the property totaled $4,621.00, an increase of $2,817.00. Therefore, there was competent evidence from which the trial court could conclude that the net increase in value of the property was $7,050.00 less $2,817.00, or $4,233.00. The trial court valued the property at $37,979.00.

Pursuant to statute, passive appreciation in the value of marital property between the date of separation and the date of distribution is subject to equitable distribution as divisible property. N.C. Gen. Stat. § 50-20(b)(4)a. (2007). Although plaintiff presented evidence that he had made improvements to 419 Kirby Drive, the trial court discredited this evidence as not sufficiently credible or detailed. Therefore, any appreciation in the value of the property between 1999 and 2008 was passive and subject to equitable distribution as divisible property. Although the trial court did not separately label the net value as of the date of separation ($33,746.00) and the net value of the divisible passive appreciation ($4,233.00), we cannot discern an abuse of the trial court's discretion in reaching the overall value of $37,979.00 ($33,746.00 plus $4,233.00) for 419 Kirby Drive. Because there is evidence to support the trial court's valuation, we affirm its conclusion.

As to the residence at 123 Riverside Drive, the 1999 tax value was $61,200.00. As of the date of separation, there was an outstanding mortgage balance of $76,864.44. Accordingly, there was competent evidence from which the trial court could conclude that its net value as of the date of separation was $61,200.00 less the outstanding mort-

gage balance of $76,864.44, yielding negative equity of $15,664.44. By 2007, the tax value of the home was $101,430.00, an increase of $40,230.00. The mortgage balance at that time had been reduced by $29,275.44 to $47,589.00. Plaintiff had made the mortgage payments between the date of separation and the date of distribution. Pursuant to statute, "decreases in marital debt" are divisible property, subject to equitable distribution. N.C. Gen. Stat. § 50-20(b)(4)d. (2007). Therefore, there was competent evidence from which the trial court could conclude that the net value of the divisible property was $40,230.00 plus $29,275.44, or $69,505.44. The trial court valued 123 Riverside Drive at $53,841.00.

When the date of separation negative equity of $15,664.44 is subtracted from the net value of the divisible property of $69,505.44, the result is $53,841.00—the value assigned by the trial court. Therefore, we can discern no abuse of discretion in the trial court's valuation of 123 Riverside Drive.

[2] Plaintiff next argues that the trial court erred in not specifically distributing the debt secured by another of the parties' real estate holdings. We agree.

In its order, the trial court distributed real property located at 508 Glasgow Road to defendant. As with the real property located at 123 Riverside Drive, on the date of separation, the encumbrances on this property exceeded the value of equity. The property had appreciated passively, and plaintiff had made payments on the associated marital debt. The trial court valued 508 Glasgow at $19,091.00 without detailing how it calculated that figure. The trial court did not specifically distribute the remaining $25,109.00 balance of the marital debt on the property.[1]

In addition to raising valuation arguments similar to those raised on the above properties, plaintiff contends that the trial court intended to distribute the debt to defendant along with the real property. Because the mortgage is held in his name, he remains responsible for the debt. He contends that the matter should be remanded so that the trial court can clarify its intentions. Defendant contends that it was proper for the trial court to distribute the property to her but the outstanding debt to plaintiff. Because it is not clear from the trial

---

1. The trial court did not specifically distribute the remaining $47,589.00 balance of the marital debt on the property located at 123 Riverside Drive either. However, plaintiff has not challenged that fact. Ultimately the Riverside Drive property was distributed to him.

court's order whether the outstanding debt secured by the property located at 508 Glasgow Road is to be distributed to defendant along with the property, or to plaintiff separate from the property, we remand this matter to the trial court for clarification.

As to the property's value, the 1999 tax value was $34,890.00. As of the date of separation, there was an outstanding mortgage balance of $43,360.73. The 2006 tax value was $44,200. By the date of distribution, the mortgage balance had been reduced to $25,108.37 due to plaintiff's payments. The trial court valued 508 Glasgow Road at $19,091.00.

Similar to the property located at 123 Riverside Drive, between the date of separation and the date of distribution, the tax value of 508 Glasgow Road passively increased by $9,310.00 from $34,890.00 to $44,200.00. The $43,360.73 marital debt was reduced by $18,252.36 due to plaintiff's payments. We can discern no abuse of discretion in the trial court's valuation of 508 Glasgow Road at $19,091.00, when the net value at the date of separation (-$8,470.73) is combined with the net value of the divisible property ($27,562.36).

[3] Plaintiff next argues that the trial court did not make sufficient findings of fact and conclusions of law to support its determination that an unequal distribution in defendant's favor was equitable. We agree.

Pursuant to North Carolina General Statutes, section 50-20(j), in any equitable distribution order, "the court shall make written findings of fact that support the determination that the marital property and divisible property has been equitably divided." N.C. Gen. Stat. § 50-20(j) (2007). "If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably[,]" considering fourteen enumerated factors. N.C. Gen. Stat. § 50-20(c) (2007). "[I]f evidence is presented as to several statutory factors, the trial court *must* make findings as to each factor for which evidence was presented." *Rosario v. Rosario*, 139 N.C. App. 258, 261, 533 S.E.2d 274, 276 (2000) (emphasis added) (citations omitted). "[T]he degree of specificity required in a court order pertaining to equitable distribution cannot be established with scientific precision." *Id.* at 267, 533 S.E.2d at 279. However, the court's findings of fact must be "sufficiently specific to allow appellate review." *Id.* (citing *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986)).

PLUMMER v. PLUMMER

[198 N.C. App. 538 (2009)]

The factors to be considered in determining that an unequal distribution is equitable are:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective.

(2) Any obligation for support arising out of a prior marriage.

(3) The duration of the marriage and the age and physical and mental health of both parties.

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects.

(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse.

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage.

(9) The liquid or nonliquid character of all marital property and divisible property.

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party.

(11) The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital prop-

erty or divisible property, or both, during the period after separation of the parties and before the time of distribution.

(11b) In the event of the death of either party prior to the entry of any order for the distribution of property made pursuant to this subsection:

> a. Property passing to the surviving spouse by will or through intestacy due to the death of a spouse.

> b. Property held as tenants by the entirety or as joint tenants with rights of survivorship passing to the surviving spouse due to the death of a spouse.

> c. Property passing to the surviving spouse from life insurance, individual retirement accounts, pension or profit-sharing plans, any private or governmental retirement plan or annuity of which the decedent controlled the designation of beneficiary (excluding any benefits under the federal social security system), or any other retirement accounts or contracts, due to the death of a spouse.

> d. The surviving spouse's right to claim an "elective share" pursuant to G.S. 30-3.1 through G.S. 30-33, unless otherwise waived.

(12) Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20(c) (2007). The trial court is required to make findings of fact as to each factor upon which evidence is presented. *Armstrong v. Armstrong*, 322 N.C. 396, 405, 368 S.E.2d 595, 600 (1988).

Here, the trial court made the following finding of fact with respect to the factors enumerated in subsection (c):

50. In considering whether an equal distribution would be equitable, the Court has considered all the evidence relating to the statutory factors set out in North Carolina General Statute 50-2[0](c) specifically including the following:

A. The income and earning abilities of the parties;

B. The length of the marriage;

C. The Plaintiff husband's interest in his 401K account and his separate use of the funds prior to the date of distribution;

D. The homemaker contributions of the Defendant wife;

E. The tax consequences to the Defendant wife, and the marital estate, of this distribution which will not qualify as a tax-exempt exchange due to the length of time since the parties' separation and divorce;

F. The Plaintiff husband's maintenance of property since the time of separation and his receipt of all the benefits from the property; and

G. The Plaintiff husband's assertion under oath of his belief that the Defendant's possession of the Kirby Street property while the Plaintiff retained possession of the remaining parcels of real property and all of the funds in the retirement account was an equitable and fair division of the marital property.

In addition to this finding of ultimate fact, the trial court made numerous additional findings of fact.

As to the first enumerated factor, the trial court found as fact that it considered the income and earning abilities of the parties; however, it failed to find as fact what the parties' incomes or earning abilities were. Although the interim distribution order stated the parties' respective incomes, the trial court neither incorporated those earlier findings of fact into its order nor found as fact that those prior findings still were accurate. Further, although there are extensive findings of fact as to the properties involved, there is no finding of fact that the trial court considered the nature of those properties in the decision to distribute the marital estate unequally. There also is no finding of fact that the trial court considered the nearly $73,000.00 in outstanding loan balances owed by plaintiff on various items of real property.

The trial court found that the parties were both in poor health. However, it failed to find that it considered the parties' physical and mental health as an unequal distributional factor, pursuant to subsection (c)(3).

There is evidence in the record that plaintiff attended two years of ministerial school during the marriage. There is no indication in the trial court's order that it considered defendant's contributions to the marriage during that time in determining that an unequal distribution of marital assets was equitable, pursuant to subsection (c)(7).

Although finding of fact number 53 refers to the non-liquidity of the marital assets, this finding of fact pertains to whether an in-kind distribution is equitable. There is no finding of fact pursuant to subsection (c)(9) that this non-liquidity was considered in determining that an unequal distribution would be appropriate.

There was evidence in the record that unbeknownst to plaintiff, defendant signed plaintiff's name to stock dividend checks for six or seven years, keeping the funds for her own use. Although the trial court found as fact that plaintiff retained exclusive use of his retirement funds, there is no similar finding of fact with respect to defendant's conversion of marital property, pursuant to subsection (c)(11a).

The trial court's findings of fact are insufficient to allow for adequate appellate review. Therefore, we remand with instructions to make more specific findings of fact with respect to the distributional factors considered and the underlying evidence supporting those distributional factors.

**[4]** Plaintiff next argues that the trial court erred in considering inappropriate factors in determining the unequal distribution of marital assets. We disagree, in part, but agree as to the tax consequences.

Plaintiff first contends that plaintiff's interest in and use of his retirement funds was not an appropriate factor to be considered by the trial court. Pursuant to section 50-20(c), "[a]cts of either party to . . . waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution" is one of the distributional factors enumerated by statute. N.C. Gen. Stat. § 50-20(c)(11a) (2007). This factor also permits the trial court to consider plaintiff's maintenance of the property and retention of the benefits of the property, which plaintiff also contends was improperly considered.

**[5]** Plaintiff next contends that the trial court's consideration of speculative tax consequences was inappropriate. Section 50-20(c)(11) requires the trial court "to consider tax consequences that will result from the distribution of property that the court actually orders." *Weaver v. Weaver,* 72 N.C. App. 409, 416, 324 S.E.2d 915, 920 (1985), *disapproved of on other grounds, Armstrong,* 322 N.C. at 403, 368 S.E.2d at 599. Here, neither party presented evidence of the potential for, or extent of, any potential tax consequences that would result from the distribution of the marital estate. However, both attorneys discussed possible tax consequences with the court in their final

arguments. Defendant's attorney argued that because the distribution was more than six years after the divorce was granted, defendant had lost the presumption of a non-taxable exchange between spouses. Plaintiff's attorney agreed that "there could be some real serious tax problems based on the exchange and the fact that it was delayed[,]" but argued that the delay should be charged against defendant and not plaintiff. However, "it is axiomatic that the arguments of counsel are not evidence." *State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) (citations omitted).

Here, the trial court found as fact that it considered "[t]he tax consequences to the Defendant wife, and the marital estate, of this distribution which will not qualify as a tax-exempt exchange due to the length of time since the parties' separation and divorce[.]" Although the trial court was authorized by statute to consider the tax consequences of the distribution, there was no *evidence* presented that the distribution would not qualify as a tax-exempt exchange between former spouses. "It is error for a trial court to consider 'hypothetical tax consequences as a distributive factor.'" *Dolan v. Dolan*, 148 N.C. App. 256, 258, 558 S.E.2d 218, 220 (quoting *Wilkins v. Wilkins*, 111 N.C. App. 541, 553, 432 S.E.2d 891, 897 (1993)), *aff'd*, 355 N.C. 484, 562 S.E.2d 422 (2002) (per curiam). Therefore, we must remand to the trial court for reconsideration in light of its finding as to this portion of the award as well.

**[6]** Plaintiff's final contention of this argument is that it was improper for the trial court to consider plaintiff's opinion regarding the equitable distribution of the parties' property. Pursuant to the "catch-all provision" of subsection (c)(12), the trial court can consider "[a]ny other factor which the court finds to be just and proper." N.C. Gen. Stat. § 50-20(c)(12) (2007). This factor is limited to those things " 'which are relevant to the marital economy[,]' " that is, relating to " 'the source, availability and use by the wife and husband of economic resources during the course of the marriage.' " *Johnson v. Johnson*, 78 N.C. App. 787, 789-90, 338 S.E.2d 567, 569 (1986) (quoting *Smith v. Smith*, 314 N.C. 80, 86, 331 S.E.2d 682, 686 (1985)). Here, plaintiff agreed that he thought that it was fair that he "would get all the retirement and all the other property and [defendant] would get Kirby Street, which was half hers anyway." This goes directly to the availability of economic resources.

There is a statutory basis for the trial court to have considered plaintiff's use of his retirement funds and his opinion regarding what was equitable. Therefore, the trial court did not err in considering

those factors. Although there also is a statutory basis for the trial court to consider tax consequences, because no evidence of tax consequences was presented, the trial court should not have considered that distributional factor.

[7] Finally, plaintiff argues that the trial court erred in ordering him to pay to defendant a $90,000.00 distributive award without considering his ability to pay, or any actual tax consequences or other costs associated with the award and adjusting the award accordingly. We disagree.

The trial court found as fact that plaintiff has the ability to pay the distributive award, noting that the value of previously received retirement funds was more than the distributive award. Plaintiff contends that there is no evidence that those funds still existed at the time of the award. We note that in addition to the nearly $99,000.00 previously withdrawn from plaintiff's retirement account, on 29 September 2007, less than five months prior to the hearing, the remaining retirement funds were equally divided between the parties pursuant to the interim equitable distribution order. At that time there were sufficient funds remaining in plaintiff's retirement account—approximately $120,000.00—to satisfy the distributive award. Plaintiff did not present evidence regarding any alleged tax consequences or other costs associated with the award; therefore, the trial court was correct in not considering the actual tax consequences to plaintiff. Therefore, this argument is without merit.

In sum, we affirm the trial court's valuation of the real property located at 419 Kirby Drive and 123 Riverside Drive. We hold that the trial court properly considered plaintiff's ability to pay a distributive award of $90,000.00 to defendant. However, we remand with instructions to the trial court to clarify to whom the debt associated with the real property located at 508 Glasgow Road is distributed. Further, we remand with instructions to the trial court to make additional findings of fact to support its conclusion that an unequal distribution would be equitable, specifying the distributional factors considered and the underlying evidence supporting those distributional factors. The trial court specifically is authorized to conduct further evidentiary hearings as it deems necessary to comply with this opinion.

Remanded.

Judges STEPHENS and STROUD concur.