ANNE LITTON WHITE [DAVIS], Plaintiff v. JOHN BLEVINS DAVIS, Defendant

No. COA03-359

(Filed 17 February 2004)

## 1. Divorce— equitable distribution—delays—no due process violation

Plaintiff's due process rights were not violated by delays in her equitable distribution action because those delays were caused by the complexity of the case and her own actions.

## 2. Divorce— equitable distribution—delay between announcement and entry of judgment

A lapse of four months between the announcement of the court's decision in open court and the formal entry of judgment was not unreasonable in an equitable distribution action involving extensive property.

## 3. Divorce— equitable distribution—pretrial order—motion to amend values—timeliness

There was no error in the denial of plaintiff's untimely motion to amend her pretrial equitable distribution order to supplement values she had marked as TBD (to be determined). The time which plaintiff claims as available to defendant for his response resulted from plaintiff's interlocutory appeal of this denial and would not have been available had the motion been granted.

## 4. Witnesses— expert—defense witness—originally hired as joint witness

Testimony from an expert witness for defendant who had originally been hired as an expert for both parties was properly admitted in an equitable distribution proceeding. Plaintiff had no expectation of privacy in hiring the witness because the data collected by the witness was always intended to be shared by both parties.

**5. Divorce— equitable distribution—interest in medical practice—distributional factor—stipulation of marital classification**

An equitable distribution defendant's interest in his medical practice was properly considered a distributional factor in his favor even though the parties had stipulated that the interest was to be classified as marital property. The trial court did not change the stipulated classification, but granted defendant the benefit of the distributional factor as a matter of fairness after defendant's expert testified that 85% of defendant's 72% interest in the practice had been gifted to him by his father and remained his separate property.

**6. Appeal and Error— assignment of error—consistency with argument**

An equitable distribution argument was deemed abandoned because it did not comport with the assignment of error.

**7. Divorce— equitable distribution—post-separation increase in value—not pursued at trial**

There was no abuse of discretion in an equitable distribution in not finding a distributional factor not pursued at trial.

Appeal by plaintiff from order dated 1 December 1997, *nunc pro tunc* March 10, 1997, orally entered order on 21 March 2000, order filed 31 October 2000, *nunc pro tunc* October 10, 2000, and judgment filed 8 July 2002 by Judge William B. Reingold in Forsyth County District Court. Heard in the Court of Appeals 3 December 2003.

*Elliot Pishko Morgan, P.A., by David C. Pishko, for plaintiff-appellant.*

*Morrow Alexander Tash Kurtz & Porter, by Gary B. Tash, for defendant-appellee.*

BRYANT, Judge.

Anne Litton White (plaintiff) appeals an order dated 1 December 1997 allowing John Blevins Davis (defendant) to use Robert N. Pulliam (Pulliam) as an expert, an order[1] entered 21 March 2000

---

1. Plaintiff cannot pursue her appeal of this order, which involved an oral denial of her motion in open court. *See* N.C.R. App. P. 3(a) ("[a]ny party is entitled to appeal from a judgment or order . . . rendered in a civil action"); *West v. Marko*, 130 N.C. App. 751, 756, 504 S.E.2d 571, 574 (1998) ("an order rendered in open court is not enforce-

denying plaintiff's oral motion to recuse Pulliam as an expert, an order dated 31 October 2000 denying plaintiff's motion to amend the equitable distribution pretrial order, and an equitable distribution judgment entered 8 July 2002.

On 9 September 1994, plaintiff filed a complaint seeking custody of the parties' children, child support, and equitable distribution. The custody and support claims were resolved first, and orders with respect to those claims were entered on 19 July 1995 and 28 May 1996 respectively. On 13 November 1997, an equitable distribution pretrial order was entered containing stipulations of the parties as to the classification (marital or separate) and value of their property. With regard to disputed property values, the pretrial order contained the separate dollar amounts claimed by plaintiff and defendant. For some of these items, the corresponding alleged values were not provided and either plaintiff or defendant merely indicated that they were "TBD" (to be determined). The pretrial order provided that:

> in the event that either party hereto has not listed any value for any item(s) of property that is marital . . . as itemized in this Pre-Trial Order . . . such party shall be required to notify the other party hereto through counsel of her or his value(s) of such property at least thirty (30) days in advance of the commencement of the equitable distribution trial . . . or upon the failure of such party to do so, the value(s) of such item(s) shall be the value(s) listed on this Pre-Trial Order by the other party hereto . . . .

The pretrial order was signed by the parties and the trial court.

The equitable distribution hearing commenced on 20 March 2000 with testimony on the value of the parties' respective medical practices and continued for a total of seventeen days over the course of two years. On 29 September 2000, plaintiff filed a motion to amend the pretrial order to include values for property she had previously marked as "TBD" in the pretrial order. The trial court denied her motion by order dated 31 October 2000. In its equitable distribution judgment entered 8 July 2002, the trial court concluded that an equal distribution of the marital property was equitable. Additional facts relevant to the analysis will be set out below.

_____

able [and therefore not individually appealable] until it is 'entered,' i.e., until it is reduced to writing, signed by the judge, and filed with the clerk of court").

**WHITE v. DAVIS**

[163 N.C. App. 21 (2004)]

The issues are whether: (I) plaintiff was prejudiced by an un-reasonable delay in the proceedings and entry of the judgment; (II) the trial court abused its discretion in denying plaintiff's motion to amend the pretrial order; (III) Pulliam, defendant's expert, was barred from testifying based on a conflict of interest; (IV) the trial court abused its discretion in considering as a distributional factor in defendant's favor his 85% separate property interest in his 72% own- ership of Salem Urological, P.A.; and (V) the trial court abused its dis-cretion in failing to consider as a distributional factor the passive post-separation increase in defendant's stock in Carolina Physicians Associates, P.A. and (VI) in Salem Trust Bank.

I

In her first assignment of error, plaintiff argues her due process rights were violated and she was prejudiced by the unreasonable delay of (A) the trial proceedings and (B) entry of the equitable dis-tribution judgment. Plaintiff points out that: the equitable distribution hearing did not commence until five years after the filing of her com-plaint; the 17 hearing dates were stretched out over the course of two years; and the equitable distribution judgment was not entered until seven months after the conclusion of the trial and four months after the trial court's oral announcement of its final decision in open court. In support of her proposition, plaintiff relies on this Court's holding in *Wall v. Wall*, 140 N.C. App. 303, 536 S.E.2d 647 (2000), which con-sidered a nineteen-month delay between the date of trial and the date of disposition "more than a *de minimis* delay," *id.* at 314, 536 S.E.2d at 654 (analyzing the appellant's due process rights).

A

*Trial Delay*

**[1]** In the case *sub judice*, it appears that much of the delay in the equitable distribution proceeding was caused by a combination of the magnitude of the case, the sheer volume of the assets at issue, and plaintiff's own actions. *See Banner v. Banner*, 86 N.C. App. 397, 403, 358 S.E.2d 110, 113 (1987) (holding that the appellant should not be allowed to benefit on appeal when she was responsible for the delay in the entry of the divorce judgment).

After filing her complaint for custody, child support, and equi-table distribution on 9 September 1994, hearings were first held on plaintiff's child custody and support claims. On the custody issue, a consent order was entered by the parties on 19 July 1995. An order for

child support was entered on 28 May 1996. Thereafter, plaintiff, filed four separate motions in the cause to modify the orders, all of which the trial court denied on 21 December 1998. Dealing with the issues of child custody and support prior to equitable distribution was a justifiable ground for the initial delay of the equitable distribution portion of the trial.

Further, according to the local rules for the Twenty-First Judicial District, Forsyth County, North Carolina, plaintiff bore the burden of producing the initial draft of the equitable distribution pretrial order, and numerous drafts were circulated between the parties until they reached agreement on the final version. The final pretrial order, entered 13 November 1997, spanned sixty-three pages and addressed 664 items of property. Following completion of this expansive document, the trial court's focus shifted back to the child custody and support issues through plaintiff's filing of her motions in the cause to modify the custody and support orders, which the trial court denied on 21 December 1998. Thereafter, the trial court scheduled the commencement of the equitable distribution hearing for 20 September 1999 but had to postpone the date when plaintiff's attorney and the trial court discovered a scheduling conflict.

During the course of the equitable distribution proceeding, for which hearings commenced on 20 March 2000, plaintiff employed seven different attorneys, who were discharged or withdrew at various stages throughout the trial. Plaintiff also appealed from an interlocutory order of the trial court, thereby further delaying the equitable distribution proceeding until the appeal was dismissed by order of this Court filed 2 April 2001.[2] In addition, the trial court was forced to move the conclusion date for the trial to a later date after plaintiff withdrew her consent to a previously announced settlement agreement. Based on these factors, we hold that plaintiff's due process rights were not violated by an unreasonable delay in the trial proceedings as any delay appears to have resulted from the complexity of the case and plaintiff's own actions.

B

*Judgment Delay*

[2] The parties acknowledge that the trial court orally rendered its decision in this case on 25 February 2002, within three months of the last trial date. Defendant's attorney then prepared the proposed draft

2. The interlocutory appeal resulted in a delay of the hearing until 13 August 2001.

of the judgment for plaintiff's review. After plaintiff requested and received extensions of time to review the extensive draft, the equitable distribution judgment, which includes twenty-five pages of findings and conclusions as well as an additional forty-nine pages of property schedules, was filed on 8 July 2002. Considering the amount of property at issue, we do not deem the time lapse of four months between the trial court's announcement of its decision in open court and formal entry of the judgment to be unreasonable under the circumstances of this case. *Cf. Wall,* 140 N.C. App. at 314, 536 S.E.2d at 654 (holding nineteen months to be too long). Accordingly, this assignment of error is overruled.

## II

**[3]** Plaintiff next assigns error to the trial court's denial of her motion to amend the pretrial order to supplement values she had only marked as "TBD" at the time the order was entered. Plaintiff acknowledges that she failed to comply with the notice provision contained in the pretrial order and did not move to amend until the hearing had already commenced. In her brief to this Court, plaintiff, however, argues that she was nevertheless entitled to the amendment because evidence on the items of property in question was not heard until several months after her request and defendant therefore would not have been prejudiced by the amendment. This argument is of no avail because at the time the trial court denied plaintiff's 29 September 2000 motion, the hearing was scheduled for conclusion during the week of 20 November 2000. It was only on 15 November 2000, through the filing by plaintiff of an interlocutory appeal from the trial court's order denying her motion to amend, that the continuation of the hearing was delayed until 13 August 2001. Consequently, had the trial court granted plaintiff's motion, defendant would not have had the amount of time to prepare as plaintiff now contends. This assignment of error is therefore without merit.

## III

**[4]** Plaintiff also argues the trial court abused its discretion in allowing Pulliam to testify as defendant's expert because, having previously been hired as a joint expert for the parties, Pulliam's representation of defendant created a conflict of interest.

We begin our analysis by noting that plaintiff has not cited any authority in support of her proposition that the use by one party of a former, privately obtained joint expert creates a disqualifying conflict

of interest between the expert and the other party. This Court has also been unable to find any authority on point but concludes that the issue can be resolved based solely on the facts of this case.

The determination of whether expert opinion testimony is admissible is within the sound discretion of the trial court. *McLean v. McLean*, 323 N.C. 543, 556, 374 S.E.2d 376, 384 (1988). In this case, shortly after their separation, the parties employed Pulliam as a neutral expert to evaluate the parties' respective medical practices for purposes of equitable distribution and provided him with data on their medical practices. In October 1996, after receiving preliminary calculations from Pulliam, plaintiff terminated her contract with Pulliam and objected to his continued involvement as defendant's expert in the equitable distribution action. The trial court entered an order dated 1 December 1997 finding:

> [T]he parties' original agreement to jointly employ . . . Pulliam to evaluate their respective individual medical practices . . . as an independent[,] impartial evaluator did not create a confidential relationship between . . . Pulliam with either party hereto . . . . [T]here would be no conflict of interest, and no prejudice to . . . [p]laintiff, for . . . Pulliam to continue to evaluate the parties' respective individual medical practices as an expert for . . . [d]efendant in this equitable distribution action . . . .

The trial court then granted defendant permission to continue using Pulliam's services and ordered:

> 2. That . . . Pulliam shall be entitled to utilize all data previously provided to him by both parties . . . and to share all such data received by him from both parties hereto with . . . [d]efendant and with this Court;

> 3. That . . . [p]laintiff shall be entitled to utilize and to provide to her substitute expert witness all data previously provided to . . . Pulliam by both parties hereto . . . .

We agree with the trial court's reasoning. In hiring Pulliam as a joint expert, plaintiff had no expectation of confidentiality. The data collected by Pulliam was always intended to be shared by the parties and thus could not have resulted in a conflict of interest after plaintiff terminated her contract with Pulliam. Moreover, in light of the trial court's instruction to make available to each side the data previously provided to Pulliam, neither party suffered prejudice from

Pulliam's continued representation of defendant. As such, the trial court did not abuse its discretion in allowing Pulliam to testify as defendant's expert at trial. *See McLean*, 323 N.C. at 556, 374 S.E.2d at 384.

IV

**[5]** Plaintiff further contends the trial court abused its discretion in considering as a distributional factor in defendant's favor his 85% separate property interest of his 72% ownership in Salem Urological, P.A. because the parties had stipulated in the pretrial order that defendant's interest in the medical practice was to be classified as marital property. *See White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (appellate review of an equitable distribution award "is limited to a determination of whether there was a clear abuse of discretion").

"An admission in a pleading or a stipulation admitting a material fact becomes a judicial admission in a case and eliminates the necessity of submitting an issue in regard thereto to the jury." *Crowder v. Jenkins*, 11 N.C. App. 57, 62, 180 S.E.2d 482, 485 (1971). It has long been established that judicial admissions are binding on the pleader as well as the court "unless modified at the trial to prevent manifest injustice." *Inman v. Inman*, 136 N.C. App. 707, 713-14, 525 S.E.2d 820, 824 (2000); *see* N.C.G.S. § 1A-1, Rule 16(a) (2001).

In this case, defendant had moved the trial court on 20 March 2000 to change the classification in the pretrial order of his interest in Salem Urological, P.A. from marital to separate property. The trial court denied defendant's motion but allowed Pulliam to testify, for the limited purpose of establishing distributional factors, that 85% of defendant's 72% interest in the practice was gifted to defendant by his father and therefore remained his separate property. In the equitable distribution judgment, the trial court *found as fact*, and consistent with the pretrial order, that defendant's interest in Salem Urological, P.A. constituted *marital property*. Based on Pulliam's testimony though, the trial court then considered *as a distributional factor* under N.C. Gen. Stat. § 50-20(c)(12), allowing for the consideration of "[a]ny other [distributional] factor which the court finds to be just and proper," N.C.G.S. § 50-20(c)(12) (2001) (same provision as in 1994),[3] that:

---

3. Because plaintiff filed her complaint in 1994, her equitable distribution claim is governed by the law of that time.

the value of marital property being distributed to . . . [d]efendant would have been reduced by $207,400.00 if . . . [d]efendant's medical practice had in fact been placed on the proper Pre-Trial Order Schedule before such Pre-Trial Order was entered by the [trial] [c]ourt (which would have increased the amount of the distributive award payable by . . . [p]laintiff to . . . [d]efendant).

In weighing the various distributional factors found in favor of both plaintiff and defendant, the trial court ultimately concluded that an equal division of the marital property was fair and equitable.

It is clear from the judgment that the trial court did not change the stipulated classification of the medical practice but, in its discretion, granted defendant the benefit of a distributional factor out of fairness considerations. As such a consideration was proper under section 50-20(c)(12) and fell within the spirit of *Inman* (allowing for the modification of judicial admissions to prevent manifest injustice), we see no abuse of discretion in the trial court's treatment of defendant's separate property interest in the medical practice as a distributional factor. We further note that, in finding distributional factors, the trial court has the discretion to consider inequities based on the classification of property as marital and that this does not have the effect of undermining the classification of the property, which will still be, and in this case was in fact, distributed as marital. *See, e.g., Collins v. Collins*, 125 N.C. App. 113, 116, 479 S.E.2d 240, 242 (1997) (a spouse's contribution of his separate property as a gift to the marital estate, in that case property held by the entireties, is a distributional factor under subdivision (c)(12)); *Minter v. Minter*, 111 N.C. App. 321, 329-30, 432 S.E.2d 720, 725-26 (1993) (holding that even though the trial court did not abuse its discretion in concluding that a spouse had failed to meet his burden of proving certain property to be his separate property, the trial court should have considered this separate property contribution to the marital estate as a distributional factor); *see also Cable v. Cable*, 76 N.C. App. 134, 137, 331 S.E.2d 765, 767 (1985) (classification, evaluation, and distribution are separate and distinct steps to be followed by the trial court in an equitable distribution proceeding).

## V

[6] Plaintiff further asserts the trial court abused its discretion in failing to consider as a distributional factor the passive post-separation increase in defendant's stock in Carolina Physicians Associates, P.A.

**WHITE v. DAVIS**

[163 N.C. App. 21 (2004)]

This argument, however, does not comport with the assignment of error referenced by plaintiff, which only attacks the trial court's date-of-separation valuation of the stock. Accordingly, plaintiff's argument is deemed abandoned. *See* N.C.R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal").

## VI

**[7]** Finally, plaintiff contends the trial court abused its discretion in failing to consider as a distributional factor the post-separation increase in the value of Salem Trust Bank stock.

During the hearing on 15 August 2001, the trial court indicated its willingness to consider this increase in value as a distributional factor and told plaintiff it would accept an offer of proof as to the post-separation value of the stock if she were to make one. In her brief to this Court, plaintiff does not assert and a review of the transcript does not indicate that (1) her counsel presented evidence on the amount of the post-separation increase of the stock or (2) even argued for the finding of such a distributional factor when the trial court reached the distributional portion of the trial in November 2001. In light of plaintiff's failure to pursue the issue at trial and offer any evidence on the alleged increase in the stock value, the trial court did not abuse its discretion in failing to find the contended distributional factor. *See Truesdale v. Truesdale*, 89 N.C. App. 445, 450, 366 S.E.2d 512, 516 (1988) (the trial court must only consider those distributional factors raised by the evidence).

Plaintiff's remaining assignments of error not raised in her brief are deemed abandoned. *See* N.C.R. App. P. 28(a).

Affirmed.

Judges CALABRIA and ELMORE concur.