MARK MONROE CHEEK, Plaintiff v. SANDRA GREGORY CHEEK, Defendant

No. COA10-736

(Filed 19 April 2011)

**1. Divorce— equitable distribution—retirement accounts— diminution in value—insufficient findings on active or passive forces**

The trial court erred in an equitable distribution case by its distribution of the parties' retirement accounts. The case was remanded for entry of findings of fact as to whether the decreases in property were due to the actions of defendant wife or passive forces, and for any adjustments of the award consistent with those findings.

**2. Divorce— equitable distribution—retirement accounts— tax—consequences**

The trial court did not abuse its discretion in an equitable distribution case by failing to award an in-kind distribution of the marital and divisible property for plaintiff's retirement accounts. The trial court was not required to consider tax consequences when no such evidence was placed before it.

**3. Divorce— equitable distribution—classification—marital property—insurance check to repair roof—bank account**

The trial court did not err in an equitable distribution case by failing to classify and distribute as marital property a check for $2,288.26 from an insurance company to repair the roof of the marital home. The money was part of the value assigned to the house and land. However, the case was remanded for findings related to plaintiff's Piedmont Aviation Credit Union account and for amending the equitable distribution order if necessary solely on the basis of those findings.

Appeal by defendant from order entered 18 December 2009 by Judge Jeanie R. Houston in Yadkin County District Court. Heard in the Court of Appeals 1 December 2010.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Tobias S. Hampson, and Edward Eldred, for plaintiff.*

*Tharrington Smith, LLP, by Roger W. Smith, Sr., Jill Schnabel Jackson, and H. Suzanne Buckley, for defendant.*

ELMORE, Judge.

Mark Monroe Cheek (plaintiff) and Sandra Gregory Cheek (defendant) were granted a divorce judgment on 27 June 2007. An equitable distribution order[1] was entered on 18 December 2009 providing for an equal distribution of marital and divisible property. That order included a number of assets, including the marital home, vehicles, and bank and retirement accounts.

I.

[1] Defendant's first argument focuses primarily on the distribution of the parties' retirement accounts. Each party owned three retirement accounts as of the date of separation; two of those belonging to defendant diminished substantially in value during the separation period. Defendant argues that the trial court erred by not considering that diminution in value as divisible property. Specifically, defendant argues that the change in value of the property in question was a result of external, market forces, rather than any action taken by herself, and thus the diminution should be split between the parties. We disagree.

The relevant statute defines "divisible property" in part as:

> All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.

N.C. Gen. Stat. § 50-20(b)(4)a (2009). "Under the plain language of the statute, all appreciation and diminution in value of marital and divisible property is presumed to be divisible property *unless* the trial court finds that the change in value is attributable to the postseparation actions of one spouse." *Wirth v. Wirth*, 193 N.C. App. 657, 661, 668 S.E.2d 603, 607 (2008).

This Court recently examined the distinction between active and passive changes in value in this context: " '[P]assive appreciation' refers to enhancement of the value of property due solely to inflation, changing economic conditions, or market forces, or other such circumstances

---

1. The document is actually titled "Equitable Distribution Judgment/Order," but, as our statutes term it an "equitable distribution order," we refer to it as such herein. *See, e.g.,* N.C. Gen. Stat. § 50-21(a) (2009).

**CHEEK v. CHEEK**

[211 N.C. App. 183 (2011)]

beyond the control of either spouse. " 'Active appreciation,' on the other hand, refers to financial or managerial contributions of one of the spouses." *Brackney v. Brackney*, —— N.C. App. —— , ——, 682 S.E.2d 401, 408 (2009) (citations and quotations omitted; alteration in original).

As noted, defendant's argument on this point concerns two of defendant's retirement accounts: (1) an individual retirement account with Fidelity, which had a balance of $3,182.00 on 17 May 2006, the date of separation, and (2) a 401(k) account from Sprint, also administered by Fidelity, which had a balance of $128,191.26 on the date of separation. This latter account was a company stock purchase plan that enabled defendant to purchase Sprint stock at a price lower than the publicly available price.

On 24 January 2008, defendant transferred the assets from both accounts into an IRA rollover account with Merrill Lynch. All told, the new account received $15,148.51 in cash and 5921 shares of Sprint stock, valued at approximately $10.53 per share, for a total value of $77,496.51 in the new account. Defendant purchased a Blackrock Mutual Fund with the cash portion. She testified that she made the decision to move the assets herself "because [the account] needed to be diversified, because the Sprint stock had fell [sic] so much."

In sum, between the date of separation, 17 May 2006, and the date of the equitable distribution order, 18 December 2009, the accounts diminished in value from a total of $131,373.26 to $37,199.03. However, on the worksheet attached to its order, the trial court listed the value of defendant's 401(k) as $128,191.26 and the value of defendant's other IRA as $3,182.00—that is, the accounts' values as of the date of separation.

Defendant argues that the difference in value should have been classified as divisible property because it was due to the kinds of market forces this Court has classified as "passive" depreciation, in this case, rather than being attributable to the actions of one party. While we agree that change in the actual value of the stocks was out of defendant's hands, we cannot cast in the same light defendant's selling the stocks, moving the money to a different account with a different firm, and purchasing/trading with the resulting funds. Such actions are precisely the type of "managerial contributions" described by *Brackney* and, as such, the trial court did not err in not classifying the change in value as divisible property.

However, we cannot endorse the trial court's failure to make findings of fact regarding the nature of this property. In order to make the most accurate distribution of assets, the trial court should have made

findings of fact as to whether the decrease in property was due to the actions of defendant or passive forces. As noted above, the presumption is that such dimunition is divisible "*unless* the trial court finds that the change in value is attributable to the postseparation actions of one spouse." *Wirth*, 193 N.C. App. at 661, 668 S.E.2d at 607. If the trial court is unable to attribute a portion of the decrease to the active efforts of defendant, then the presumption is that the entire loss is divisible and such loss should be apportioned evenly between the parties. *Id.*

As such, we remand this case for entry of findings of fact on these points, and any adjustment of the award consistent with those findings.

## II.

[2] Defendant next argues that the trial court erred in its failure to award an in-kind distribution of the marital and divisible property— specifically, plaintiff's retirement accounts. She also argues that the trial court erred by not taking into account the fact that, if she liquidates the portion of the securities fund being distributed to her, she will incur tax and other penalties. These arguments are without merit.

Two sections of N.C. Gen. Stat. § 50-20 are implicated by this argument:

(c) There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. The court shall consider all of the following factors under this subsection: . . . (11) The tax consequences to each party[.]

\* \* \*

(e) *Subject to the presumption of subsection (c) of this section that an equal division is equitable,* it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property.

N.C. Gen. Stat. § 50-20(c), (e) (2009) (emphasis supplied).

Defendant first argues that the presumption of subsection (e)—that an in-kind distribution is the equitable solution in such a proceeding—was not rebutted by plaintiff, and therefore the trial court should have made such a distribution. However, defendant's argument ignores the emphasized opening phrase of that subsection, which notes that this presumption is subject to that in subsection (c). It also ignores the fact that our "review of an equitable distribution award 'is limited to a determination of whether there was a clear abuse of discretion[.]' " *White v. Davis*, 163 N.C. App. 21, 28, 592 S.E.2d 265, 270 (2004) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

In support of her argument regarding in-kind distribution, defendant cites two cases: *Shaw v. Shaw*, 117 N.C. App. 552, 451 S.E.2d 648 (1995), and *Embler v. Embler*, 159 N.C. App. 186, 582 S.E.2d 628 (2003). In both, this Court remanded because the trial court failed to make findings of fact as to how the defendants could pay the ordered amount.

In *Shaw*, there was evidence before the trial court that the sole source from which the defendant could draw to pay the ordered amount was his retirement fund; this Court noted that "[t]here was no evidence before the trial court that the defendant had liquid assets totaling" the ordered amount and held:

It appears, therefore, that the defendant would have to withdraw money from the thrift plan in order to make the distributive award. The defendant had placed evidence before the trial court that such a withdrawal would result in the loss of employer contributions or harsh tax consequences. The trial court must consider these issues before requiring the defendant to make the lump sum distributive award payment. This case must be remanded to the trial court for a determination of whether the defendant has assets, other than the thrift plan, from which he can make the distributive award payment.

117 N.C. App. at 555, 451 S.E.2d at 650.

In *Embler*, the Court considered a very similar issue, and held:

Although defendant may in fact be able to pay the distributive award, defendant's evidence is sufficient to raise the question of where defendant will obtain the funds to fulfill this obligation. As in *Shaw*, the court below ordered defendant to pay

CHEEK v. CHEEK

[211 N.C. App. 183 (2011)]

the distributive award without pointing to a source of funds from which he could do so even though defendant had no obvious liquid assets. If defendant is ordered to pay the distributive award from a non-liquid asset or by obtaining a loan, the equitable distribution award must be recalculated to take into account any adverse financial ramifications such as adverse tax consequences. *Shaw* requires that we remand for further findings as to whether defendant has assets, other than non-liquid assets, from which he can make the distributive award payment.

159 N.C. App. at 188-89, 582 S.E.2d at 630.

That is, in both cases, the error was the trial court's failure to consider whether the defendant could pay the ordered amount. This Court's orders to remand in both cases were based on the tax consequences to the *payor*, not the *payee*, of the funds at issue, and the purpose of remand was to have the trial court determine whether the payors were able to make the payments ordered. These cases are thus inapposite to the case at hand, and we hold that the trial court did not abuse its discretion in crafting the order as it did.

As to defendant's argument regarding taxation, as this Court recently noted, "tax consequences are only considered' [i]f the court determines that an equal division is not equitable[.]' " *Stovall v. Stovall*, ——N.C. App.——, ——, 698 S.E.2d 680, 687 (2010) (quoting N.C. Gen. Stat. § 50-20(c) (2009); alterations in original) (holding that "the trial court did not err in not considering the tax implications to defendant"). Indeed, "[i]t is error for a trial court to consider 'hypothetical tax consequences as a distributive factor.' " *Dolan v. Dolan*, 148 N.C. App. 256, 258, 558 S.E.2d 218, 220 (2002) (quoting *Wilkins v. Wilkins*, 111 N.C. App. 541, 553, 432 S.E.2d 891, 897 (1993)). Defendant does not argue that she placed evidence of tax consequences before the trial court, and thus the trial court would have been in error to consider such consequences in its order. As such, this argument is without merit.

[3] Finally, defendant argues that the trial court erred by failing to classify and distribute two specific pieces of property—a check for $2,288.26 from an insurance company to repair the roof of the marital home and plaintiff's Piedmont Aviation Credit Union Account—as marital property. We disagree.

Per statute, marital property is

all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property in accordance with subdivision (2) or (4) of this subsection. . . . It is presumed that all property acquired after the date of marriage and before the date of separation is marital property except property which is separate property under subdivision (2) of this subsection. This presumption may be rebutted by the greater weight of the evidence.

N.C. Gen. Stat. § 50-20(b)(1) (2009).

This Court's "review of an equitable distribution award 'is limited to a determination of whether there was a clear abuse of discretion[.]'" *White*, 163 N.C. App. at 28, 592 S.E.2d at 270 (quoting *White*, 312 N.C. at 777, 324 S.E.2d at 833).

As to the check, there seems to be no dispute in the record that the check was issued by the insurance company for the purposes of partially funding necessary repairs to the roof of the marital home. The relevant finding of fact stated that plaintiff "received an insurance check for $2,286.26 for damages to the roof of the home distributed to [plaintiff]. That amount is needed and is to be used to repair the roof and does not add net value to" the stated value of the marital home. Defendant argues that, because the trial court found that the money was obtained during the marriage and prior to separation, and that no evidence supported its being "acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage" to make it separate property, the trial court was required to consider it marital property.

However, as noted above, such determinations are up to the trial court's discretion. Here, the trial court clearly determined that the money at issue was part of the value assigned to the house and land. As the money was clearly intended to repair the house—that is, to bring it back up to its stated value—we cannot say that the trial court abused its discretion in not considering it as a piece of marital property distinct from the value of the house.

As to the bank account, plaintiff testified that the account, containing a total of $1,531.65, did exist on the date of separation, and that it was funded by "money that comes out of my check and goes into a savings account, more or less, to pay different things during the

year." That is the only evidence in the record as to the source of the funds in that account, and defendant is correct in stating that the trial court did not make any findings of fact as to the account or, indeed, mention it in the order at all. As such, we remand to the trial court for findings solely related to that account and for amending the equitable distribution order if necessary solely on the basis of those findings.

Affirmed in part, remanded in part.

Judges HUNTER and CALABRIA concur.