An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-960

Filed 5 November 2025

Mecklenburg County, No. 19CVD004868-590

CARRIE O'BRIEN, Plaintiff,

v.

KEVIN O'BRIEN, Defendant.

Appeal by Defendant from order entered 16 January 2024 by Judge Paige McThenia in Mecklenburg County District Court. Heard in the Court of Appeals 12 August 2025.

> *Marcellino & Tyson, PLLC, by Clay A. Campbell, for Plaintiff-Appellee.*
>
> *Thurman, Wilson, Boutwell & Galvin, P.A., by John D. Boutwell, for Defendant-Appellant.*

GRIFFIN, Judge.

The questions we are asked to resolve here are related to an equitable distribution proceeding. Defendant Kevin O'Brien appeals from the trial court's amended equitable distribution order, contending the trial court erred in its classification of his townhomes, bank accounts, and tax liability; its valuation of the townhomes and accounts; and its consideration of distributional factors. Plaintiff

Carrie O'Brien cross-appeals from both the original and amended orders, arguing the trial court erred in its classification of townhomes, a bank account, a portion of cash funds, and its valuation of townhomes, a car, and club membership. We affirm in part and remand.

## I. Factual and Procedural Background

Plaintiff and Defendant married on 23 November 2002. Plaintiff and Defendant had their first child on 15 October 2004 and their second child on 12 January 2007. The couple legally separated on 17 August 2018. On 14 March 2019, Plaintiff filed a complaint for equitable distribution. About two months later, Defendant filed an answer and a counterclaim for equitable distribution. Following a three-day trial, the trial court entered a written equitable distribution order on 20 January 2023.

Ten days after the order was entered, Defendant filed a motion pursuant to Rules 52 and 59 of the North Carolina Rules of Civil Procedure requesting the trial court to amend its findings and conclusions, make additional findings, amend the order, and/or order a new trial. The trial court held a hearing on Defendant's motion on 6 July 2023. On 16 January 2024, the trial court entered an amended equitable distribution order. Less than a month later, Defendant filed a notice of appeal. Plaintiff filed a notice of cross-appeal shortly afterward.

## II. Analysis

Defendant appeals from the amended equitable distribution order arguing the trial court erred multiple times in its classification and valuation of assets, as well as its consideration of distributional factors. Plaintiff cross-appeals, likewise claiming the trial court erred in its classification and valuation of assets.

**A. Jurisdiction**

This Court has jurisdiction to review a district court's final judgment in a civil action. N.C. Gen. Stat. § 7A-27(b)(2) (2023). The trial court's equitable distribution order is a final judgment.

**B. Standard of Review**

This Court reviews an appeal from a non-jury trial judgment to determine whether "there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Stovall v. Stovall*, 205 N.C. App 405, 407, 698 S.E.2d 680, 683 (2010). "Competent evidence is 'evidence that a reasonable mind might accept as adequate to support the finding.'" *Smith v. Smith*, 387 N.C. 255, 258, 912 S.E.2d 762, 765 (2025) (citation omitted). If there is competent evidence to support a finding, the finding is conclusive on appeal even though there may be contrary evidence. *Johnson v. Johnson*, 117 N.C. App. 410, 413, 450 S.E.2d 923, 926 (1994). The trial court weighs the evidence and makes reasonable inferences from it. *Sauls v. Sauls,* 236 N.C. App. 371, 373, 763 S.E.2d 328, 330 (2014) (citation omitted). Therefore, this Court shall not reweigh the evidence on appeal. *Id.* (citation omitted).

Conclusions of law are reviewed de novo. *Mugno v. Mugno*, 205 N.C. App 273, 276, 695 S.E.2d 495, 498 (2010).

This Court reviews an equitable distribution order by determining whether there was an abuse of discretion. *Stovall*, 205 N.C. App at 407, 698 S.E.2d at 683. Under the abuse of discretion standard of review, a trial court's decision may only be reversed upon a demonstration that the court's decision was so arbitrary that it was not supported by reason. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

## C. Equitable Distributions

In ordering an equitable distribution, a trial court must classify property as marital, divisible, or separate, identify the net value of the marital and divisible property, and make an equitable distribution of that property. *Cunningham v. Cunningham*, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005); *Hamby v. Hamby*, 143 N.C. App. 635, 638, 547 S.E.2d 110, 112 (2001).

### 1. Classification of Property

This Court will not disturb a trial court's property classification if competent evidence supports the determination. *Smith*, 387 N.C. at 258, 912 S.E.2d at 765.

Marital and divisible property must be divided equally unless a court decides that an equal distribution would be inequitable. *Hamby*, 143 N.C. App. at 638, 547 S.E.2d at 112; *Davis v. Davis*, 360 N.C. 518, 527, 631 S.E.2d 114, 120 (2006). Separate

property is not included in the equitable distribution. *Crowell v. Crowell*, 372 N.C. 362, 368, 831 S.E.2d 248, 252 (2019).

Marital property encompasses all presently owned real and personal property acquired by at least one spouse during marriage and before separation. N.C. Gen. Stat. § 50-20(b)(1) (2023). Separate property, conversely, includes real or personal property acquired by a spouse before marriage and property acquired by a spouse by devise, descent, or gift during the marriage. N.C. Gen. Stat. § 50-20(b)(2). Additionally, income derived from separate property is separate property. *Id.* Divisible property includes appreciation and diminution of marital and divisible assets after the date of separation and before the date of distribution (unless such change in value is a consequence of postseparation conduct), any portion of property or property rights received after the date of separation and before the date of distribution that was acquired as a result of efforts made during the marriage and before the separation (i.e. commissions, bonuses, and contractual rights), passive income received after the date of separation from marital property, and passive changes in marital debt, financing charges, and marital debt interest. N.C. Gen. Stat. § 50-20(b)(4).

"'[A]ll appreciation and diminution in value of marital and divisible property is presumed to be divisible property unless the trial court finds that the change in value is attributable to the postseparation actions of one spouse.'" *Cheek v. Cheek¸* 211 N.C. App. 183, 184, 712 S.E.2d 301, 303 (2011) (citation omitted). Appreciation

in the value of marital property caused by postseparation conduct shall be excluded from divisible property. N.C. Gen. Stat. § 50-20(b)(4)(a).

Debt is considered marital debt when it is "incurred during the marriage and before the date of separation" by at least one spouse "for the joint benefit of the parties." *Riggs v. Riggs*, 124 N.C. App. 647, 652, 478 S.E.2d 211, 214 (1996).

Separate property rental property may wholly retain its separate property status when separate property rental income paid mortgage payments, taxes, insurance, and repairs. *Watkins v. Watkins*, 228 N.C. App. 548, 559, 746 S.E.2d 394, 401 (2013). Additionally, property acquired by an exchange of separate property is separate property. *Crumbley v. Crumbley*, 70 N.C. App. 143, 145, 318 S.E.2d 525, 526 (1984).

There is a distinction between active and passive appreciation in property classification and valuation. *See Fountain v. Fountain*, 148 N.C. App. 329, 333, 559 S.E.2d 25, 29 (2002). The appreciation of separate property due to an active increase in the property's value is marital property. *Id.* Active increases include increases in value due to substantial financial and managerial contributions from the marital estate. *Id.* Passive appreciation of separate property, such as inflation and changing economic conditions, remains separate property. *Id*; *O'Brien v. O'Brien*, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998). A trial court must classify each type of appreciation appropriately, by evidential support and findings of fact. *Ciobanu v. Ciobanu*, 104 N.C. App. 461, 466–67, 409 S.E.2d 749, 752–53 (1991).

There is a presumption "that all property acquired after the date of marriage and before the date of separation is marital property except" intentionally stated gifts from the other spouse, licenses, exchanged separate property without contrary stated intent, an increase in value and income from separate property, and inheritance or gifts from a third party. N.C. Gen. Stat. § 50-20(b)(1)-(2). This "presumption may be rebutted by the greater weight of the evidence." N.C. Gen. Stat. § 50-20(b)(1). The party championing for a specific property classification must show by a preponderance that the property falls within the certain classification. *Power v. Power*, 236 N.C. App 581, 586, 763 S.E.2d 565, 569 (2014) (citation omitted). After a party meets their burden of proof showing a specific classification, the burden shifts to the opposing party to demonstrate a different classification. *See Fountain*, 148 N.C. App. at 332–33, 559 S.E.2d at 29. If both parties meet their burdens of proof by a preponderance, then the property is deemed separate property. *Id.* at 333, 559 S.E.2d at 29.

### a. *Townhome 1031 Exchange Appreciation*

Here, based on the finding the South Carolina townhome was partially separate and partially marital property, the trial court found the North Carolina townhome partially separate and partially marital property, as well. Defendant purchased a townhome in South Carolina prior to the marriage, and, after getting married, exchanged the South Carolina property for a townhome located in North Carolina. Defendant claims the South Carolina townhome was separate property

because it was purchased before the marriage. Further, Defendant contends, since exchanges of separate property remain separate property, the trial court misclassified the North Carolina townhome as partially marital.

Defendant is correct that property acquired before marriage is generally separate property and that separate property exchanged for other property retains its separate property status. However, evidence in the record shows the South Carolina townhome, despite being acquired prior to the marriage, operated at a loss for multiple years during the marriage. Consequently, the townhome was consuming marital property to fund its upkeep. Furthermore, during the marriage, the South Carolina townhome needed maintenance work and renovations. This record evidence supports the trial court's finding that the South Carolina townhome is partially marital property. This Court need not reweigh the evidence. Since the trial court found the South Carolina townhome was partially marital based upon competent record evidence, Defendant's argument that the 1031 exchange involved solely separate property fails.

### b. *Vanguard Individual Account*

Defendant claims the trial court did not classify the passive increase of Plaintiff's Vanguard individual account from date of separation to the date of trial. Defendant espouses that Plaintiff's individual account's gains were passive and not a result of Plaintiff's postseparation conduct, and as such the trial court should have classified it as divisible property. However, Plaintiff provided evidence that the

increase in the value of the Vanguard account was a result of an interim distribution less expenses such as bill payments and tax liabilities and penalties. Thus, based on competent evidence, the trial court found the increase in funds in the Vanguard account was not passive, but rather a result of an interim distribution. Therefore, the court concluded the increase was not divisible property. Thus, we affirm.

### c. *Forte Account*

Defendant argues the trial court erred by classifying his Forte account as marital property. Defendant testified the funds in his Forte account came from an inheritance from his mother. However, when asked to trace his inheritance within the account at trial, Defendant was unable to do so with the documents that he had at trial. Although tracing may not be necessary, the trial court based its finding on Defendant's lack of ability to prove his inheritance at trial. A reasonable mind could accept the lack of tracing documentation as adequate to support the finding that Defendant's account is not separate property. Consequently, the finding is supported, and the trial court did not err.

### d. *2018 Tax Liability*

Defendant claims the trial court erred in classifying Plaintiff's 2018 tax liability as marital debt. Defendant argues Plaintiff failed to meet her burden of proof as to the tax liability's occurrence taking place prior to separation. Nevertheless, Plaintiff provided testimony supporting that the portion of liability was for the 2018 tax returns—the same year of the separation.

Defendant also argues Plaintiff did not demonstrate how the debt benefited the marriage, a requirement for marital debt classification. Plaintiff presented her heightened tax liability for 2018, the result of not filing jointly with Defendant. Considering Defendant and Plaintiff as a married couple, before separation, filing jointly would have benefited both parties together. The trial court relied in part on Plaintiff's substantiated evidence of bank statements and records. This documentation meets the standard of competent evidence. We affirm the classification of this debt.

*e. UBS Account*

Plaintiff argues the trial court incorrectly found Defendant's use of his UBS account containing stock options from his employer as marital property. She points to Defendant's partial individual use of such funds to pay for lawyers. However, Defendant provided evidence that he used the funds for their children's 529 accounts, taxes due on their homes, credit card payments, and payments to the IRS. A reasonable person could find that such expenses adequately support a finding that these funds were used for marital purposes.

While there was evidence of Defendant using the UBS funds for individual use, specifically for lawyers in preparation of separation, there is also competent evidence to support the trial court's finding that the funds were used for marital purposes. Thus, we affirm.

*f. Marital Cash Funds*

Plaintiff asserts the trial court erred in treating a withdrawal of $8,100 as marital funds. Although there is no evidence pointing to the origin of these funds, circumstances suggest these funds were acquired during the marriage because the couple had been together for many years. Further, the withdrawal did not appear to come from a separate property account. Plaintiff would have needed to prove by a preponderance that these cash funds were separate property. However, Plaintiff failed to provide any evidence as to how these funds were used and the presumption is that property acquired during the marriage is marital. Therefore, the trial court's finding that the $8,100 withdrawal was marital funds is affirmed.

### 2. *Valuation of Property*

If a trial court's valuations of property are supported by evidence, the findings regarding value are conclusive on appeal despite contrary evidence. *Pellom v. Pellom*, 194 N.C. App. 57, 66–67, 669 S.E.2d 323, 328 (2008) (citation omitted).

The net value of the marital property is the fair market value of such property less any liabilities on that property. *Hamby*, 143 N.C. App. at 638, 547 S.E.2d at 112. When both marital and separate estate assets are used to acquire property, then each estate attains an interest in the property that is proportional to its contribution. *Brackney v. Brackney*, 199 N.C. App. 375, 384, 682 S.E.2d 401, 407 (2009) (citation omitted).

Lay persons may testify to the value of property if that person can demonstrate knowledge of the property and some basis for the opinion offered. *Finney v. Finney*,

225 N.C. App. 13, 16, 736 S.E.2d 639, 642 (2013) (citation omitted). Generally, owners have this type of knowledge and basis for such testimony. *Id.* Nevertheless, if there is an affirmative appearance that an owner lacks knowledge of the property's market value, then the owner may not be competent to testify. *Hill v. Sanderson*, 244 N.C. App. 219, 232, 781 S.E.2d 29, 39 (2015) (citation omitted). Furthermore, if the person testifying to the value of a property admits a lack of knowledge as to the property valuation, then such testimony will be excluded and cannot support a finding of fact. *Id*.

### a. *South Carolina Townhome 1031 Exchange for North Carolina Townhome*

The trial court made a finding of fact as to the appreciated value of the North Carolina townhome based on Plaintiff's testimony. Defendant claims the trial court erred in its valuation of the exchanged townhome claiming Plaintiff was not competent to testify as to that valuation. Defendant points to evidence that Plaintiff was never an owner of the property and, therefore, alleges Plaintiff did not have specific knowledge regarding the value of the NC townhome. Defendant did not testify to the value of the townhome.

Plaintiff was indeed not listed on the title of the townhome. Defendant is correct that an owner is generally assumed to have competency to testify as to the property's value. However, a person is not required to be an owner to possess knowledge of the property and some basis for his/her opinion. Furthermore, although Plaintiff admitted that she lacked specific knowledge as to the total amount of *marital*

*proceeds* spent on the upkeep of both the South Carolina and North Carolina townhomes, she did not demonstrate an affirmative lack of knowledge as to the *appreciated value* of the property. Plaintiff's testimony is competent evidence.

The trial court valued the townhome's portion of marital property as the amount paid towards the mortgage. Plaintiff and Defendant both argue the trial court incorrectly determined the portion of the property that was marital, each party pointing to different considerations that the trial court should have supposedly weighed more (i.e. renovations and rental income payments towards the mortgage). Nevertheless, the trial court's findings were supported with competent evidence that the couple had paid down part of the mortgage during their marriage. *See Beightol v. Beightol*, 90 N.C. App. 58, 60–62, 367 S.E.2d 347, 349–50 (1988) (holding that the wife was entitled to marital interest in the rental property acquired by the husband before marriage as the wife helped with the property and contributed marital funds to it). We affirm the trial court's valuation of the North Carolina townhome.

b. *Vanguard Individual Account*

Defendant claims the trial court failed to value the passive increase of Plaintiff's Vanguard individual account from the date of separation to the date of trial. However, because we affirm the trial court's finding that the increase in the Vanguard account was not divisible, the question is moot.

c. *Jeep Vehicle*

Plaintiff and Defendant testified as to different amounts for the value of a Jeep. The trial court's finding of fact concluded that Defendant's testimony of the Jeep's fair market value was credible. Plaintiff argues Defendant's testimony, based upon a Carfax report, was too dated to be accurate. Despite contrary evidence, the trial court's finding was supported by competent evidence. *Johnson*, 117 N.C. App. at 413, 450 S.E.2d at 926.

### d. 401K/Retirement Account

Plaintiff argues the trial court incorrectly valued Defendant's 401k/Retirement account because of Defendant's lack of evidence to support his summary exhibit and the trial court's failure to calculate gains and losses on funds deposited and withdrawn after the date of separation. Plaintiff claims the data does not support Defendant's compilation. In his testimony, Defendant acknowledged that he had made an error and then corrected his exhibit. Even though Plaintiff may point to controverting evidence in support of her claim that the trial court's valuation was incorrect, the trial court's finding of fact is supported by evidence in the record, including Defendant's testimony. Therefore, we give deference to the trial court's finding as a reasonable person may have found Defendant's testimony along with supporting exhibits adequately acceptable in support of such a finding.

### e. Peninsula Yacht Club Membership

Defendant acquired a Peninsula Yacht Club Membership during Plaintiff and Defendant's marriage. The trial court found that neither party offered evidence that

the couple's Peninsula Yacht Club Membership was in existence on the date of separation; thus, the trial court claimed it could not distribute it. However, the trial court erred in making this finding of fact. Both Plaintiff and Defendant offered evidence of the membership's existence in their testimonies. Defendant testified he stopped being a member at least a couple years *after* the date of separation. This would make Defendant and his family members as of the date of separation. Furthermore, Plaintiff testified as to the value of the yacht club membership when it was purchased as well as the value as of the date of separation. Thus, the trial court erred in finding that no evidence showed that the membership existed then.

### 3. *Distribution of Property*

When the trial court decides that equal division of property is not equitable, the court must divide the marital and divisible property equitably. N.C. Gen. Stat. § 50-20(c) (2023). To divide such property equitably, the trial court must consider certain factors for each party along with any other factor the court deems just and proper. *Id.* The factor applicable to this case is "[t]he income, property, and liabilities of each party at the time the division of property is to become effective." *Id.* Furthermore, all liabilities, not just marital ones, are to be considered by the trial court. *Geer v. Geer,* 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987). Lastly, in the distributional factors analysis, the trial court must include all appropriate findings of fact as to the distributional factors. *Smith v. Smith*, 247 N.C. App. 135, 161, 786 S.E.2d 12, 31 (2016). It is inadequate if the trial court does not consider the relevant

findings as distributional factors, even if the trial court makes other findings of fact as to the certain matter. *Id.*

### a. *Vanguard Individual Account*

Defendant asserts the trial court failed to distribute the passive increase of Plaintiff's Vanguard individual account from date of separation to the date of trial. The trial court did not err by excluding the alleged passive increase in value to the Vanguard account from its distribution because we affirm its separate property classification.

### b. *401K/Retirement Account*

Plaintiff claims the trial court incorrectly distributed the 401k/Retirement account to Plaintiff and Defendant. Plaintiff argues the trial court erred in failing to apply gains and losses to all deposits and withdrawals after the date of separation. In turn, Plaintiff claims, the trial court inaccurately distributed the funds from the 401k/Retirement account. Nevertheless, Defendant testified to the amounts and occurrences of his withdrawals and deposits after the date of separation. The trial court's findings of fact regarding the distributions are supported by competent evidence, Defendant's testimony.

### c. *Distributional Factors*

Defendant contends the trial court did not sufficiently consider his separate debt in the distribution of assets. Defendant claims the trial court failed to include

his separate debt and Plaintiff's separate funds in her Vanguard individual brokerage account.

We disagree with Defendant's claim that the trial court failed to consider Plaintiff's Vanguard individual brokerage account. Although not mentioned by name, the Vanguard individual brokerage account may be included in the trial court's consideration of Plaintiff's "other investments."

We agree with Defendant's claim that the trial court failed to include Defendant's separate credit card indebtedness. Although the trial court did make findings of fact pertaining to the liability prior to the distributional factor analysis, the lack of inclusion of the debt in the distribution analysis is inadequate. Thus, this Court remands the case to the trial court to reanalyze the distribution with consideration of Defendant's debt.

### III.   Conclusion

In conclusion, we affirm the trial court's order as to its classification of both the South Carolina and North Carolina townhomes, the Vanguard account, the Forte account, the 2018 tax liability, the UBS account, and the $8,100 cash withdrawal.

Furthermore, we affirm the trial court's order as to its valuation of the North Carolina townhome, the Jeep, and the 401k/Retirement account. However, we remand for valuation of the Peninsula Yacht Club Membership.

We affirm the distributions of Defendant's 401k/Retirement account. Lastly, we affirm the trial court's consideration of Plaintiff's funds in her Vanguard

account, but remand for consideration of Defendant's separate credit card debt. The trial court may hear additional evidence in its discretion.

AFFIRMED IN PART; REMANDED IN PART.

Judges GORE and STADING concur.

Report per Rule 30(e).